[Civ. No. 31114.   Second Dist., Div. Five.   Mar. 12, 1968.]

HERBERT L. BURROWS et al., Plaintiffs and Appellants, v. THE STATE OF CALIFORNIA, Defendant and Respondent.

Levin, Oliker & Ballin and Harmon R. Ballin for Plaintiffs and Appellants.

Harry S. Fenton, R. B. Pegram, Richard L. Franck, Charles E. Spencer, Jr., and Jack M. Miller for Defendant and Respondent.

KAUS, P. J.—This is an action against the State of California for diversion of surface waters.

The complaint alleges that plaintiffs own a trailer park on Soledad Canyon Road in Los Angeles County. In April 1963, the defendant state resurfaced and widened the road near plaintiffs' property. "As a result' 'of said resurfacing and widening, the road surface to the center and edge thereof was raised and a previously existing gutter "eliminated, thereby causing a change in the drainage pattern *on* the trailer park property." (Italics ours.) As a result, water on plaintiffs' property does not drain adequately, debris and dirt from ponding remain on plaintiffs' property, access to the property has been reduced and water flows onto plaintiffs' property from adjoining land.

It is impossible to tell from this complaint just exactly what the state is supposed to have done and how this has affected plaintiffs' property. There is, however, no need to analyze the complaint, for after the case was at issue a series of pretrial orders clarified the nature of plaintiffs' complaint.

The first pretrial conference was held on September 5, 1965. At that time it was stipulated that certain "'legal issues" would be tried on December 22, 1965. Other issues were to be tried on April 18, 1966. One of the legal issues was described as follows: "Was there a substantial diversion of a water flow, i.e., a diversion which proximately caused substantial damage to the land of the plaintiffs, caused by the construction of the public improvement by the defendant?" On December 20, 1965, the parties filed a stipulation which included the following paragraph: "The issue of whether there was a substantial diversion of water flow, i.e., a diversion which proximately caused substantial damage to the land of plaintiffs, caused · by the construction of the public improvement by the defendant, is a mixed question of law and

fact which can be more properly tried at the time of the jury trial. Included within this issue is whether one of the results of the alleged diversion of water flow was to impair access to said property by reason of the accumulation of water, mud and debris damaging the blacktopped entranceway.'' An order of court approving the stipulation was signed the same day. Then, on April 4, 1966, there was another pretrial conference order which contained the following recital: ''The First Pretrial Order heretofore made on September 13, 1965, as amended by the court's order of December 20, 1965 pursuant to stipulation, is incorporated herein by reference and made a part of this final order.''

The purpose of pretrial had been served. The real issue had been pinpointed as one of diversion of water flow. Although there is nothing specific in the record that says so, at the oral argument before us the parties agreed that the type of water flow which defendant is supposed to have diverted is one of surface waters. There appears to be no problem on that score.

When the case went to trial defendant made a motion for a judgment on the pleadings. It was granted.

The judgment contains the following recital: ''the parties have stipulated and thereby conceded that the complaint does not state a cause in tort, for negligence or nuisance, and that the actual facts are insufficient to constitute a cause of action in tort, for negligence or nuisance; . . .''

The parties agree that what was granted by the superior court was not strictly a ''judgment on the pleadings'' as the pleadings had been supplanted by the pretrial orders. (*Fitzsimmons* v. *Jones,* 179 Cal.App.2d 5, 9-10 [3 Cal.Rptr. 373].)

For the moment we leave aside the stipulation referred to in the judgment. We do not know exactly what was argued before the trial court, but if it was anything like the written and oral arguments before us, it had nothing to do with the case presented by the issues that were joined.

The argument before the trial court took place on April 20-21, 1966. It is obvious from the arguments of the parties taken before this court, that defendant not only persuaded itself, but the trial court and plaintiffs' counsel as well. that *Keys* v. *Romley,* 64 Cal.2d 396 [50 Cal.Rptr. 273, 412 P.2d 529]. decided just over a week earlier, would have denied recovery to plaintiffs if defendant were a private person. Accepting this erroneous premise, plaintiffs then took the position that this was of no concern to them since their action was in inverse condemnation and *Albers* v. *County of Los Angeles,* 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129], gives them the

right to compensation even if they have no cause of action against a private party. The briefs are full of elaborate discussions concerning the sweep of the *Albers* decision but we think they are beside the point because plaintiffs have stated a good cause of action in spite of *Keys* v. *Romley, supra.*[1]

In *Keys,* the court reviewed the California law with respect to surface waters. It recognized that California had followed the so-called "civil law rule" to the effect that there exists a "servitude" of natural drainage between adjoining parcels, so that the lower owner must accept the surface waters which naturally drain onto his land; correlatively, the rule denies to the upper owner any privilege to alter the natural system of drainage so as to increase the burden. Recognizing that the civil law rule had a tendency to discourage the improvement of land since almost any use of property is likely to cause a change of drainage, the court, in *Keys,* abandoned the strict civil law rule and adopted what it calls a "modified civil law rule." Not every interference with natural drainage injurious to the land of another is now actionable. The concept of reasonable use enters the picture. "What is in any particular case, reasonable use or management has been held to be a mixed question of law and fact to be submitted to the jury under proper instructions." (*Ibid.,* p. 403.) "Failure to exercise reasonable care may result in liability by an upper to a lower landowner. It is equally the duty of any person threatened with injury to his property by the flow of surface waters to take reasonable precautions to avoid or reduce any actual or potential injury." (*Ibid.,* p. 409.) On the other hand if both the upper and the lower landowner are reasonable, "then the injury must necessarily be borne by the upper landowner who changes a natural system of drainage, in accordance with our traditional civil law rule." (*Ibid.,* p. 409.)[2]

The last quoted statement is repeated in the opinion: "If the facts should indicate both parties conducted themselves reasonably, then courts are bound by our well-settled civil law rule." (*Ibid.,* p. 410.)

Three rules are thus expressly laid down in *Keys*: 1. If the upper owner is reasonable and the lower owner unreasonable,

---

[1]That is only so if we look at the complaint together with the pretrial orders, as we will throughout this opinion. This is, of course, proper. (*Fitzsimmons* v. *Jones, supra.*)

[2]*Keys* v. *Romley, supra,* was filed the same day as its companion case, *Pagliotti* v. *Acquistapace,* 64 Cal.2d 873 [50 Cal.Rptr. 282, 412 P.2d 538]. That case involved not only the extent of the upper owner's privilege to divert and discharge surface waters onto the lower owner, but also the

the upper owner wins; 2. If the upper owner is unreasonable and the lower owner reasonable, the lower owner wins; and 3. If both the upper and lower owner are reasonable, the lower owner wins also.[3]

Thus, *Keys* offers no incentive to a reasonable lower owner to try to plead and prove that the upper owner's diversion of surface water has been unreasonable. He prevails, whatever the nature of the upper owner's conduct. Why should he undertake the burden of proving the upper owner's diversion to be unreasonable? The reasonable diverter's money spends just as nicely. ■ The truth of the matter is that the bite of *Keys* lies in its focus on the lower owner's conduct: the upper owner now has a defense he did not have before, to wit, the unreasonableness of his lower neighbor's conduct. The burden of pleading and proving this defense should be on defendant.

If the state wanted to claim—in reliance on *Keys*—that plaintiffs were foreclosed from recovery by the unreasonableness of their conduct, it should have moved to amend its answer and the statement of issues in the pretrial conference order (Code Civ. Proc., § 576); but the judgment on the pleadings assumes not only the injection of the new issue, but dispenses with proof thereof.

■ We now turn to the stipulation: Obviously, plaintiffs did not intend to stipulate away their case while urging it. It seems quite plain that the stipulation is nothing but the result of the erroneous legal assumptions made by both parties and that it was intended to put the spotlight on plaintiff's unnecessary reliance on *Albers* v. *County of Los Angeles, supra*. Further, the stipulation is beside the point and meaningless. It is beside the point because negligence as such is an

---

latter's privilege to repel such waters. We note that the present case involves no claim by the defendant that plaintiff has wrongfully or unreasonably obstructed the flow of surface waters. Therefore, nothing stated in this opinion necessarily applies to claims of wrongful obstruction. Such wrongful obstruction is not, however, the only claim of ''wrongful'' conduct which can be levied against a lower owner. As we read *Keys*, the lower owner's unreasonable conduct may also consist in failing to fulfill his obligation, when threatened with injury to his property, ''to take reasonable precautions to avoid or reduce any actual or potential injury.'' Wherever in this opinion we speak of the lower owner's conduct as being reasonable or unreasonable, we refer only to a failure to take the protective measures mentioned by the Supreme Court.

[3]It is not clear from *Keys* whether the Supreme Court left room for the fourth possible permutation, namely a situation where both are unreasonable.

irrelevant concept in surface water cases. As the court said in *Keys*: "We reiterate that the question is not one of strict negligence accountability. . . ." The reason for this statement is plain: in these surface water cases we do not usually deal with unintended, though foreseeable consequences of acts or omissions, but rather with intended results which may or may not be reasonable, depending on all of the circumstances. (Rest., Torts, §§ 825-831.)

The stipulation is meaningless, because "nuisance" is an amorphous term unless further defined.[4] A stipulation that plaintiffs could not prove a nuisance is therefore of no value.

Even if we were to hold that *Keys* v. *Romley, supra,* firmly establishes that California, in line with section 833 of the Restatement of Torts, considers an interference with the flow of surface waters as a type of nuisance, the stipulation still will not quite do the trick. It can be interpreted in two ways:

1. Plaintiffs agree that a diversion of surface waters is a nuisance and stipulate that they cannot prove such a diversion. As previously noted such an interpretation is unthinkable. Plaintiffs obviously did not want to go to trial on a case they did not have.

2. More likely, plaintiffs were saying that, though actionable, defendant's diversion was not a nuisance. Thus interpreted, it is nothing but an erroneous legal conclusion which the trial court should not have accepted. (*Adelstein* v. *Greenberg,* 77 Cal.App. 548, 552 [247 P. 520]; cf. *Desny* v. *Wilder,* 46 Cal.2d 715, 729 [299 P.2d 257]; *Escobedo* v. *Travelers Ins. Co.,* 197 Cal.App.2d 118, 127 [17 Cal.Rptr. 219].)

The judgment is reversed.

Hufstedler, J., and Stephens, J., concurred.

A petition for a rehearing was denied April 10, 1968, and respondent's petition for a hearing by the Supreme Court was denied May 9, 1968.

---

[4]"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition. Few terms have afforded so excellent an illustration of the familiar tendency of the courts to seize upon a catchword as a substitute for any analysis of a problem; the defendant's interference with the plaintiff's interests is characterized as a 'nuisance,' and there is nothing more to

be said. With this reluctance of the opinions to assign any particular meaning to the word, or to get to the bottom of it, there has been a rather astonishing lack of any full consideration of 'nuisance' on the part of legal writers. . . .'' (Prosser on Torts (3d ed. 1964) p. 592.)