[Civ. No. 29290. First Dist., Div. Three. Feb. 9, 1973.]

GEORGE MARMENT et al., Plaintiffs and Appellants, v.
CASTLEWOOD COUNTRY CLUB et al., Defendants and Respondents.

## COUNSEL

Ahern, Mooney & Moore and William H. Ahern for Plaintiffs and Appellants.

Burnhill, Rode, Moffitt & Moore, Clifford Burnhill and Cyril Viadro for Defendants and Respondents.

## OPINION

**DRAPER, P. J.**—This appeal concerns the liability of an upper owner to lower owners for damages allegedly resulting from diversion of surface waters. In November 1966, defendants installed a drainage system which picked up both surface and sub-surface water, and deposited it at the edge of plaintiffs' property. Shortly thereafter, land of plaintiffs began to slip, the movement ultimately resulting in substantial, if not total, loss of plaintiffs' homes. Jury verdict was for defendants, and plaintiffs appeal from the judgment entered upon the verdict.

The issue on appeal is the propriety of the court's instructions upon the rights and duties of upper and lower landowners. There was a conflict of expert testimony as to the cause of the slippage of plaintiffs' land. Plaintiffs' expert testified that it was due solely to incursion of water. Defendants' expert felt that it was due to movement along the Calaveras fault, wholly unrelated to water movement. But since there were no special verdicts, we cannot assume that the verict is based upon the issue of proximate cause. It is therefore necessary to determine the propriety of the instructions upon diversion of surface flow of water.

A 1966 decision (*Keys* v. *Romley*, 64 Cal.2d 396 [50 Cal.Rptr. 273, 412 P.2d 529]) reviews in detail the development of the law, in this state and other jurisdictions, upon the rights and duties of upper and lower landowners when the former diverts the flow of surface waters so as to cause them to be discharged upon the lower land in greater quantity or in a different manner than would occur under natural conditions.

*Keys* points out that California until then had followed the civil law rule, which imposed liability quite strictly upon one who interfered with the natural flow of water so as to cause an invasion of another's use and enjoyment of his land, although the strict rule had been somewhat modified in particular fact situations. But the civil law rule appeared unnecessarily rigid. Hence the Supreme Court determined that the true doctrine derives from the law of torts, rather than that of property. It announced the correct rule to be that each owner must "take reasonable care in using his own property," i.e., "[n]o party . . . may act arbitrarily and unreasonably in his relations with other landowners. . . ." Thus the upper owner must act reasonably to avoid, and the lower owner to protect against, injury to the lower land through diversion of the flow of water. If both act reasonably, then the upper owner is liable (*id.,* p. 409).

The trial court, in apparent recognition of a portion of the *Keys* rule, instructed at length upon negligence as it is usually defined in personal injury actions. This approach, however, overlooks the *Keys* statement that "the question is not one of strict negligence accountability, . . . The question is reasonableness of conduct." (*Id.,* p. 409.) The distinction is emphasized in *Keys* by language requiring consideration of such factors as the amount of harm caused, the foreseeability of such harm, the purpose or motive of the diverter and a comparative weighing of the utility of the diversion against the gravity of the harm caused by it (*id.,* p. 410). These elements are not included or suggested in the trial court's instructions defining the nature and effect. of negligence and contributory negligence in the usual personal injury context.

The sole instruction dealing directly with diversion of water does contain one affirmative misstatement of law. It states that a landowner "is not obliged to protect his land against flooding caused solely by negligence of another," and that absence of such protection is not "contributory negligence." This blurs, if it does not eliminate, the requirement of *Keys* that the lower owner must "take reasonable precautions to avoid or reduce" injury (*id.,* p. 409). We recognize that, as respondents contend, the correct instruction could but benefit respondents, and thus its omission can hardly prejudice appellants.

The important point on this appeal, however, is that the instructions nowhere directed the jury to apply the test of reasonableness of the action of an owner—the core test laid down by *Keys*. Moreover, the instructions are unduly slanted in favor of defendants-respondents. They point out only circumstances in which a defendant is not liable and none in which he is. While a jury somewhat trained in the law could perhaps perceive that converse situations would support a verdict for plaintiffs, nowhere is there any direct statement to that effect.

We conclude that the instructions, in addition to emphasizing "strict negligence accountability," in contravention of the *Keys* rule, left the jury without any understanding of the true rule and afforded no basis for any verdict based upon the law as stated in *Keys*. We do not, of course, suggest a result which should be reached. We must reverse in order to permit a fact finder adequately aware of the basic law to reach a verdict applying the true rule as laid down in *Keys*.

Judgment reversed.

Brown (H. C.), J., and Caldecott, J., concurred.