[Civ. No. 47540. Second Dist., Div. Three. June 29, 1976.]

GERALDINE LUCILLE MIKKELSEN et al.,
Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

ANITA GONNE, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

William P. Camusi and Ned Good for Plaintiffs and Appellants.

Harry S. Fenton, Joseph A. Montoya, Robert L. Meyer, Irwin Schulman, Colin L. Love and Robert W. Vidor for Defendant and Respondent.

## OPINION

FORD, P. J.—The plaintiffs in two consolidated actions to recover damages for wrongful death have appealed from a judgment for the defendant State of California (hereinafter the State) rendered after the trial of the issue raised by the State's affirmative defense of immunity pursuant to Government Code section 830.6.[1] (Code Civ. Proc., § 597.) The deaths were caused by the collapse in the severe earthquake of February 9, 1971, of an elevated concrete connector (hereinafter bridge) which crossed over lanes of the Golden State Freeway in the Sylmar area. The decedents were traveling in a motor vehicle on the Golden State Freeway. The question presented for resolution on this appeal is whether the trial court erred in refusing to permit the plaintiffs to proceed on the theory of nuisance after finding in favor of the State with respect to the issue of design immunity (Gov. Code, § 830.6).

Appellants direct attention to their pleadings. In the Mikkelsen complaint it is alleged in the second cause of action as follows: "That the Division of Highways [now Department of Transportation] of the State of California unreasonably determined to take the risk that, in the future, there would be no earthquakes reaching the Sylmar area of Los Angeles County, and thereupon executed the designs and plans and specifications for the said connector over-crossing which they knew to be inadequate to withstand the force of an earthquake. That while the Division of Highways was aware of the seismic problems involved in the Sylmar area of Los Angeles County, it did not design nor plan the said connector over-crossing for the purpose of meeting said problems." And in the third cause of action it is alleged: "That in designing and planning and supervising the construction of said connector over-crossing, the Division of Highways of the State of California failed to comply with applicable statutory and regulatory standards. That as a proximate result of said

---

[1]Government Code section 830.6, a part of the Tort Claims Act, is as follows: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (See *Baldwin* v. *State of California*, 6 Cal.3d 424 [99 Cal.Rptr. 145, 491 P.2d 1121].)

failure to comply with said statutory and regulatory standards, the said connector over-crossing was unable to withstand the forces of the earthquake of February 9, 1971, and collapsed, all as heretofore described."[2]

In the second cause of action of the Gonne complaint it is alleged: "That in choosing the site for said freeway in the Sylmar area, defendants and each of them only took into account economic factors and completely disregarded the seismic considerations, although said defendants had been warned of the seismic problems in the Sylmar area." And in the third cause of action it is alleged: "Defendants, and each of them, negligently designed, constructed and maintained the said concrete connector over-crossing hereinabove described so as to proximately cause it to collapse . . . ."

Appellants argue that the facts alleged in the complaints fall squarely within the provisions of Civil Code section 3479, quoting portions of that section as follows: "Anything which . . . obstructs the free passage or use, in the customary manner, of any . . . highway, is a nuisance." They further argue that, at "the very least," they should have been permitted to go to trial "on the theory of nuisance based on negligence." They thereafter state: "No doubt the basic complaint in this case is to the effect that this freeway overhead connector was poorly designed to protect against earthquakes" and that "when we refer to defective or poor design, there is really no basic difference between the theories of negligence and strict liability."

With respect to the Mikkelsen pleading that the State "unreasonably determined to take the risk that, in the future, there would be no earthquakes reaching the Sylmar area of Los Angeles County," it is stated that "appellants, at the very least, should have been permitted to proceed to trial on the theory of nuisance based on intentional conduct which could and did lead to an obstruction of the highway when the earthquake occurred."

Government Code section 815 is as follows:

"Except as otherwise provided by statute:

---

[2]Appellants have not designated the particular "applicable statutory and regulatory standards" with respect to which there was a lack of compliance.

"(a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

"(b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

In the Legislative Committee comment on section 815 it is stated: "In the following portions of this division there are many sections providing for the liability of governmental entities under specified conditions. In other codes there are a few provisions providing for the liability of governmental entities, e.g., Vehicle Code Section 17001 et seq. and Penal Code Section 4900. But there is no liability in the absence of a statute declaring such liability. For example, there is no section in this statute declaring that public entities are liable for nuisance, even though the California courts have previously held that public entities are subject to such liability even in the absence of statute. Under this statute, the right to recover damages for nuisance will have to be established under the provisions relating to dangerous conditions of public property or under some statute that may be applicable to the situation."

In *Nestle* v. *City of Santa Monica,* 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480], a case involving injuries alleged to have been suffered by the plaintiffs by virtue of the defendant's operation of an airport near the plaintiffs' properties, our Supreme Court stated with respect to Government Code section 815 (p. 932): "Thus the Legislature erected as its policy cornerstone a bar against governmental liability 'except as otherwise provided by statute.' The Senate committee comments make clear that the Tort Claims Act itself does not provide for governmental liability for nuisance . . . . Therefore, liability, if it exists, must be authorized by other statutory provision."

After discussing cases which, prior to the enactment in 1963 of the Tort Claims Act, "emphasized that section 3479 of the Civil Code provided a viable statutory basis for governmental liability and avoided a defense of sovereign immunity,"[3] the court stated in *Nestle* (6 Cal.3d at

---

[3]The full text of Civil Code section 3479 is as follows: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or

pp. 933-934): "It therefore appears that with respect to nuisance the rule immediately prior to the enactment of the Tort Claims Act was consistent with that subsequently required by the act: to avoid the general rule of immunity, a suit for nuisance must find statutory support and such support may be furnished by section 3479. (See A Study Relating to Sovereign Immunity, 5 Cal. Law Revision Com. Rep. (Jan. 1963) pp. 1, 227.) ■ 'The fact that [the nuisance statutes] are general in language, and do not specifically refer to public entities, does not preclude their application to such entities, because generally worded code sections are applied to governmental bodies if no impairment of sovereign powers would result.' (Van Alstyne, *supra*, § 5.10 at p. 126; see also *Flournoy* v. *State of California* (1962) 57 Cal.2d 497, 498-499 [20 Cal.Rptr. 627, 370 P.2d 331].) ■ [¶] While neither party in the instant case has cited controlling authority holding that nuisance actions against public bodies are either precluded or permitted by operation of Government Code section 815, three opinions of the Court of Appeal have impliedly recognized the continued existence of such a cause of action." However, none of the cases cited (*Burrows* v. *State of California* (1968) 260 Cal.App.2d 29 [66 Cal.Rptr. 868] (diversion of surface waters); *Granone* v. *County of Los Angeles* (1965) 231 Cal.App.2d 629 [42 Cal.Rptr. 34] (flooding of plaintiffs' land); *Lombardy* v. *Peter Kiewit Sons' Co.* (1968) 266 Cal.App.2d 599 [72 Cal.Rptr. 240], disapproved in *Southern Cal. Edison Co.* v. *Bourgerie,* 9 Cal.3d 169, 175 [107 Cal.Rptr. 76, 507 P.2d 964] (damage to property adjacent to freeway)) involved a condition dangerous for users of a highway arising from a defective plan or design.

In *Nestle* our Supreme Court concluded that "section 815 of the Government Code does not bar nuisance actions against public entities to the extent such actions are founded on section 3479 of the Civil Code or other statutory provision that may be applicable." (6 Cal.3d at p. 937.)

In the light of the background hereinabove set forth we turn to a consideration of the nature of the tort alleged to have been committed by the State in the present case.

It is clear that none of the acts or omissions alleged in appellants' pleadings was of such a nature as to constitute an intentional tort. Assuming that the pleaded facts offer some basis for a claim that the

---

unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

bridge constituted a nuisance, that nuisance—as appellants appear to concede—rested solely upon alleged negligence. But that negligence consisted of the construction of the bridge pursuant to a plan or design alleged to have been defective. The trial court, however, determined that the circumstances brought the matter within the immunity provision of Government Code section 830.6. (See fn. 1 of this opinion.) ▪ As stated in the Law Revision Commission Comment, "Section 830.6 provides immunity where a governmental body exercises the discretion given to it under the laws of the state in the planning and designing of public construction and improvements."

In *Baldwin* v. *State of California, supra,* 6 Cal.3d 424, at pages 434-435, our Supreme Court stated with respect to the purpose of legislation providing for design immunity: "We think that in enacting section 830.6, the Legislature was concerned lest juries be allowed to second-guess the discretionary determinations of public officials by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan. As the New York Court of Appeals stated in *Weiss* v. *Fote, supra* [7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960)]: 'We are of the opinion that the traditional reliance on a jury verdict to assess fault and general tort liability is misplaced where a duly authorized public planning body has entertained and passed on the very same question of risk as would ordinarily go to the jury.' (7 N.Y.2d 579, 588.)"

We are thus brought to the question of whether the immunity embodied in Government Code section 830.6 can be avoided by the pleading of a cause of action in nuisance rather than in negligence. The resolution of that question requires a consideration of the concept of nuisance. ▪ After quoting Civil Code section 3479 (see fn. 3 of this opinion), Witkin states: "Notwithstanding the simplicity of the foregoing statement, the term is so loosely used that accurate definition is extremely difficult. . . . In other words, the central idea of nuisance is the unlawful invasion of an interest. The type of tortious conduct is immaterial; it may be intentional, negligent, reckless or ultrahazardous." (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 91, p. 5314.)

▪ In the present case it is clear that, whether the cause of action be pleaded in the language of nuisance or in that of negligence, the core of appellants' case is the allegedly defective plan or design of the bridge. As in *O'Hagan* v. *Board of Zoning Adjustment,* 38 Cal.App.3d 722 [113

Cal.Rptr. 501], a question is presented as to the extent of an immunity provision embodied in the Tort Claims Act.

In *O'Hagan* the court stated (38 Cal.App.3d at pp. 728-729): "While it is clear from the language of the Tort Claims Act that its liabilities are subject to immunities established by statute whether inside or outside the act (cf. §§ 815, subd. (b); 815.2, subd. (b); 820, subd. (a); Van Alstyne, Cal. Government Tort Liability, *supra,* § 5.29, at p. 140), it is not entirely evident whether the immunity provisions of the Tort Claims Act extend to liabilities created by statute outside the act. (Van Alstyne, Cal. Government Tort Liability, *supra,* § 5.28, p. 139.) . . . For the reasons which follow we resolve the conflict in favor of the Tort Claims Act, and hold that the immunity provisions of the act must be given effect over the damage provisions of Code of Civil Procedure section 1095."

Here, as in *O'Hagan,* the pertinent code section outside the Tort Claims Act is general in nature in that Civil Code section 3479 covers all nuisances whether arising from intentional, negligent, reckless or ultra-hazardous acts. As aptly stated in *O'Hagan* (38 Cal.App.3d at p. 729): "In other words, this means that the Tort Claims Act is a special statute regulating the tort liabilities and immunities of public entities and employees, while Code of Civil Procedure section 1095 [in the instant case, Civil Code section 3479] is a general statute providing for damages in mandamus proceedings which embrace a great variety of legal actions [citations]. This, of course, calls into play the well established legal principle that where inconsistencies appear in statutes, a special statute dealing expressly with a particular subject controls and takes priority over the general statute (*Brill* v. *County of Los Angeles* (1940) 16 Cal.2d 726, 732 [108 P.2d 443]; *Tousley* v. *Dishman* (1928) 90 Cal.App. 759, 761 [266 P. 373])."

In *O'Hagan.* the appellate court further stated (38 Cal.App.3d at pp. 729-730): "Secondly, and more importantly, weighty if not overriding policy considerations also impel the conclusion reached above. It is plain that the resolution of the conflict here poses a legal policy question, the determination of which calls for careful deliberation and weighing of the legislative intent underlying the respective statutes (cf. Van Alstyne, Cal. Government Tort Liability, *supra,* § 5.28, p. 140). . . . [I]n enacting the Tort Claims Act the avowed legislative goal was to reaffirm the preexisting law which had eliminated the public entities' liability for the discretionary acts of their employees (legislative committee comment to

§ 820.2; Van Alstyne, Cal. Government Tort Liability, *supra,* at p. 519), and to provide an explicit immunity for licensing activities as a special form of discretionary acts (Van Alstyne, Cal. Government Tort Liability, *supra,* § 5.58, at p. 166)."

■ The legislative intent underlying the design immunity is well expressed in the comments of the California Law Revision Commission, wherein the rationale therefor was stated as follows: "There should be immunity from liability for the plan or design of public construction and improvements where the plan or design has been approved by a governmental agency exercising discretionary authority, unless there is no reasonable basis for such approval. While it is proper to hold public entities liable for injuries caused by arbitrary abuses of discretionary authority in planning improvements, to permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested." (4 Cal. Law Revision Com. Rep. (1963) p. 823.)

■ To permit the effectiveness of the design immunity embodied in Government Code section 830.6 to depend upon whether a cause of action is pleaded on the theory of nuisance or on that of negligence would be to thwart the legislative purpose. To borrow the apt words of *O'Hagan* (38 Cal.App.3d at p. 730): "Considering the strongly worded legislative intent, cited above, most certainly the Legislature cannot be deemed to have intended to impose liability and abrogate immunities . . . by maneuvering with the rules of pleading and procedure."[4] Consequently, we hold that the trial court did not err in declining to allow appellants to proceed on the basis of the concept of nuisance.

■ Appellants attempt to bring their case into the same category as those in which recovery is based on the theory of inverse condemnation. They argue: "While there is no constitutional provision to protect a

---

[1]Compare Prosser, Law of Torts (4th ed. 1971) section 131, page 983, wherein it is stated: "Since liability for nuisance rests in many cases upon nothing more than negligence [fn. omitted], for which in theory the municipality is not liable, the result has been a rather hopeless attempt to distinguish between the two, which has added confusion to the law of both nuisance and municipal corporations. [Fn. omitted.] It seems reasonable to say that there is no sound argument behind the distinction itself, and that to resort to the more or less undefined concept of nuisance is merely one method by which the courts have retreated from municipal nonliability. [Fn. omitted.]"

person from bodily injury which is the equivalent of Article I, Section 14 of the California Constitution, the question arises whether to deny appellants in the case at bar an opportunity to proceed to trial on the theory of nuisance based on absolute liability, would thus unfairly discriminate in favor of the propertied class for property damage, while denying an equivalent protection to a person who sustains personal injury or death as the result of the construction of a public structure."

On this appeal we are not called upon to determine what the rights of an adjacent property owner would have been under the constitutionally based concept of inverse condemnation if the bridge had collapsed onto his land in the severe earthquake of February 9, 1971. It is sufficient to note that in the Tort Claims Act the Legislature "enacted a series of statutes to provide, in effect, that there *is* governmental immunity *except* for the very specific areas in which the statutes allowed suits." (*Roberts* v. *State of California,* 39 Cal.App.3d 844 [114 Cal.Rptr. 518], citing Gov. Code, § 815, and *Nestle* v. *City of Santa Monica, supra,* 6 Cal.3d 920, 931-932.) As stated in *Dias* v. *Eden Township Hospital Dist.,* 57 Cal.2d 502, at page 504 [20 Cal.Rptr. 630, 370 P.2d 334]: "Public agencies, generally speaking, afford a proper subject for legislative classification." No violation of the constitutional guarantees of due process and equal protection of the law has been shown.

■ Appellants further contend that if they are denied recovery, they will be subjected to unlawful discrimination because under chapter 274 of the Statutes of 1971, approved by the Governor as an urgency measure on July 7, 1971, relief was afforded to contractors in that termination of uncompleted contracts was authorized. That legislation was concerned with contractual relations between contractors and the State and was based upon the situation caused by the earthquake and the consequent necessity of "thorough geologic investigations . . . to determine the feasibility of reconstructing the damaged work, and to determine the proper placement and construction of the highway facilities." Appellants assert that such legislation "is violative of the equal protection laws of the Federal and State Constitutions" in that contractors are singled out for special benefits.

In *Brown* v. *Merlo,* 8 Cal.3d 855, at page 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], our Supreme Court stated that the " 'equal protection' preserved by both state and federal Constitutions, . . . 'does not preclude the state from drawing any distinctions between different

groups of individuals' (*In re King* (1970) 3 Cal.3d 226, 232 [90 Cal.Rptr. 15, 474 P.2d 983]), but it does require that, at a minimum, 'persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' [Citations.]" The matter of the contractual relationship between contractors and the State with respect to the construction, past and future, of the freeway project was distinct from that of the issue of tort liability of the State for the injury or death of users of the freeway because of the collapse of the bridge in the earthquake. Consequently, two distinct classes of persons existed. The legislation to which reference has been made does not afford a basis for a claim on the part of appellants of a deprivation of due process or of equal protection of the law. Clearly, appellants are not parties aggrieved by the post-earthquake urgency legislation relating to contractors. (See *Estate of Horman*, 5 Cal.3d 62, 77-78 [95 Cal.Rptr. 433, 485 P.2d 785].)

 Appellants challenge the constitutionality of the design immunity embodied in Government Code section 830.6. The core of their extensive argument is that there is no rational basis for that immunity. That argument is not persuasive. As has been noted hereinabove, the legislative plan in the Tort Claims Act was to embody "a series of statutes to provide, in effect, that there *is* governmental immunity *except* for the very specific areas in which the statutes allowed suits." (*Roberts* v. *State of California, supra,* 39 Cal.App.3d 844, 849.) We perceive no constitutional compulsion to abandon the justification for the immunity stated by our Supreme Court in *Baldwin* v. *State of California, supra,* 6 Cal.3d 424, at pages 434-435.

The judgment is affirmed.

Allport, J., and Potter, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 15, 1976.