[No. B125408. Second Dist., Div. Four. Nov. 27, 2000.]

DIANA GDOWSKI, Cross-complainant and Appellant, v. JAMES S. LOUIE et al., Cross-defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part D of the Discussion.

**COUNSEL**

Cox, Castle & Nicholson and Stanley W. Lamport for Cross-complainant and Appellant.

Ropers, Majeski, Kohn & Bentley, Susan H. Handelman, and Benjamin T. Rice for Cross-defendants and Respondents.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

Diana Gdowski and James S. and Roella Louie own adjoining properties in a residential subdivision in Palos Verdes Estates. Following heavy rains in January 1995, Gdowski's home was flooded and severely damaged. By a cross-complaint, Gdowski (plaintiff) sued the Louies (defendants), claiming they were responsible for her loss because their landscaping had altered the natural flow of the surface waters.

A jury trial was conducted which resulted in a defense verdict. On this appeal, plaintiff raises contentions of instructional error and improper evidentiary rulings. Plaintiff's claim of instructional error is well taken. As we will explain, decisional law defining liability based upon a defendant's diversion of the natural flow of water makes clear that traditional negligence principles do not apply in this situation. In particular, even were a jury to find that defendants had acted reasonably, defendants would nonetheless still be liable for plaintiff's damages if the jury also found plaintiff had acted reasonably. Plaintiff submitted jury instructions based upon this body of law. The trial court refused to use those instructions and, instead, instructed the jury using general principles of negligence and contributory negligence. This constitutes prejudicial error requiring retrial before a properly instructed jury. This analysis essentially renders moot consideration of plaintiff's particular claims of evidentiary error, which are addressed in the nonpublished portion of this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

*Evidence Presented at Trial*

Each house is on a relatively flat lot. Plaintiff's home was built in 1968; she purchased it in 1993. Defendants' home was constructed in 1971; they purchased it in 1978.

Defendants' home is directly behind plaintiff's residence. There is a seven-and-one-half-foot-wide service walk area behind plaintiff's house which constitutes 354 square feet. It is at this point where the two properties meet that the controversy arises. Plaintiff's primary theory was that defendants' 1981 landscaping of their backyard caused all water runoff from their property to go in the direction of the rear of plaintiff's home at the service

walk area. Secondarily, plaintiff claimed that the mounded lawn in the defendants' front yard erected a barrier which prevented their rear yard from draining to the street. Plaintiff claimed these configurations essentially channeled an 8,900-square-foot drainage area (defendants' property) into her 354-square-foot rear walk, causing significant flooding and damage to her home in January 1995. Whether defendants' landscaping caused the flooding and whether defendants were on notice of the potential danger *before* it occurred were two hotly disputed issues at trial.

In regard to defendants' landscaping, the defense testimony was that defendants had simply "refreshed" the backyard and had made no changes in regard to contour, elevation, or grade. However, plaintiff offered into evidence a $2,675 invoice from the landscaping company, an invoice defendant James Louie authenticated. The invoice provides that the work to be done to defendants' backyard included the removal of all trees, shrubs, lawn, and landscaping "not relevant to design" and the turning over, to a depth of six to eight inches, all of the dirt in the backyard. The landscaper was to "add topsoil/compost & amendments [and] rake, *level, grade*." (Italics added.)

Additionally, plaintiff offered testimony to support her theory. Robert Halderman, a licensed general contractor, inspected plaintiff's property in summer 1994. He believed the landscaping on defendants' property directed all of the water from defendants' backyard into plaintiff's rear service area. This included the landscaping in their rear yard as well as the mounded lawn in the front yard, which created a barrier preventing the rear yard from draining to the street. John Schuricht, a licensed civil and structural engineer, inspected the properties. He testified that based upon his review of the original building plans, water from what is now defendants' property originally drained to the front of that land and did not drain into the land now owned by plaintiff. However, a draining problem existed now because the landscaping on defendants' property diverted and caused the water to drain onto plaintiff's land.

Defendants presented a contrary expert: James Rowlands, a civil and geotechnical engineer. He testified that defendants' 1981 landscaping did not cause the water to drain onto plaintiff's property.

On the issue of whether defendants had notice of the potential problem, plaintiff testified that on August 13, 1994, she informed defendants of the problem. Defendants conceded they met with plaintiff that day but claimed they were not told water was draining from their property onto plaintiff's property. Defendants further testified that none of the prior owners of plaintiff's property had complained about flooding from their land.

Defendants advanced two points at trial. The first point was that the flooding was due to inadequate drainage on plaintiff's property that she had notice of but had failed to correct. In particular, they claimed she received notice of the problem in reports prepared in conjunction with her 1993 purchase of the home. The second point was that the January 1995 rains which caused the damage were unforeseeable and record breaking.

*Jury Instructions*

Plaintiff proffered the following three jury instructions, each of which was supported by case authority. As we will later explain, these instructions are correct statements of the law. The court refused to submit any of them.

"A duty exists to take reasonable care to avoid injury to adjacent property through the flow of surface waters. It is incumbent upon every person to take reasonable care in using his property to avoid injury to adjacent property through the flow of surface waters. Failure to exercise reasonable care may result in liability by an upper to a lower landowner." (Special Jury Instruction No. 101.)

"An upper landowner is liable to a lower landowner where there is a discharge resulting in damage to the property of a reasonable lower landowner: '(1) if the upper owner is reasonable and the lower owner is unreasonable, the upper owner wins; (2) if the upper owner is unreasonable and the lower owner is reasonable, the lower owner wins; (3) if both the upper and lower owners are reasonable the, [*sic*] the lower owner wins.'" (Special Jury Instruction No. 102.)

"An upper landowner may not avoid liability to a lower landowner by showing that a lower landowner was unreasonable simply for failing to take affirmative action to prevent the flow of surface waters onto his or her property.

"Where the lower landowner acts reasonably, by action to minimize the damage, or by inaction which does not unreasonable [*sic*] increase his damages, the upper landowner is liable for the lower landowner's damage." (Special Jury Instruction No. 103.)

In lieu of the above rejected instructions, the court instructed the jury, inter alia, that plaintiff sought damages based upon a theory of "negligence in the discharge of surface waters" and negligence in their "maintenance or management of [their premises]." Negligence was defined through the use of the standard instruction, BAJI No. 3.10, as the "doing of something which a

reasonably prudent person would not do": the "failure to use ordinary or reasonable care."[1] As to the theory of premises liability, the jury was instructed: "The owners of premises are under a duty to exercise ordinary care in the maintenance or management of the premises in order to avoid exposing persons or other property to an unreasonable risk of harm. This duty exists whether the risk of harm is caused by the natural condition of the premises or by an artificial condition created on the premises. This duty is owed to persons on the premises and to persons off the premises. A failure to fulfill this duty is negligence."

The court also submitted several instructions about comparative fault. It defined "contributory negligence" as "negligence on the part of a plaintiff which, combining with the negligence of a defendant, contributes as a cause in bringing about the injury. [¶] Contributory negligence . . . does not bar a recovery by the plaintiff . . . but the total amount of damages to which the plaintiff would otherwise be entitled shall be reduced in proportion to the amount of negligence attributable to the plaintiff." BAJI No. 14.90 explained how plaintiff's damages should be reduced were the jury to find plaintiff's injuries were caused by both defendant's negligence and plaintiff's contributory negligence. The jury was instructed, pursuant to BAJI No. 14.91, that "[i]n order to determine the proportionate share of the total fault attributable to the plaintiff, you will of necessity be required to evaluate the combined negligence of the plaintiff and the negligence of the defendants . . . . [¶] In comparing the fault of such persons you should consider all the surrounding circumstances as shown by the evidence."

[1]BAJI No. 3.10 reads: "Negligence is the doing of something which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under circumstances similar to those shown by the evidence. [¶] It is the failure to use ordinary or reasonable care. [¶] Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence. [¶] [You will note that the person whose conduct we set up as a standard is not the extraordinarily cautious individual, nor the exceptionally skillful one, but a person of reasonable and ordinary prudence.]"

BAJI Nos. 3.11, 3.12, and 3.13 were also submitted. They read: "One test that is helpful in determining whether or not a person was negligent is to ask and answer the question whether or not, if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, [he] [or] [she] would have foreseen or anticipated that someone might have been injured by or as a result of [his] [or] [her] action or inaction. If the answer to that question is 'yes,' and if the action or inaction reasonably could have been avoided, then not to avoid it would be negligence." (BAJI No. 3.11.)

"The amount of caution required of a person in the exercise of ordinary care depends upon the conditions that are apparent or that should be apparent to a reasonably prudent person under circumstances similar to those shown by the evidence." (BAJI No. 3.12.)

"Every person who is exercising ordinary care, has a right to assume that every other person will perform [his] [her] duty, and in the absence of reasonable cause for thinking otherwise, it is not negligence for such a person to fail to anticipate an accident which can occur only as a result of a violation of [duty] by another person." (BAJI No. 3.13.)

*The Verdict*

Because a general verdict form was utilized, the jury returned with a form simply stating: "We, the jury in the above-entitled action, find in favor of defendants James and Roella Louie."

## DISCUSSION

### A. *Controlling Legal Principles*

To put plaintiff's contention of prejudicial instructional error in proper context, we begin with a discussion of the relevant law governing defendants' potential liability for the damage to plaintiff's property.

The seminal case is *Keys v. Romley* (1966) 64 Cal.2d 396 [50 Cal.Rptr. 273, 412 P.2d 529] (*Keys*). The defendants owned unimproved land abutting the northeast of the plaintiffs' property. The defendants changed the contours of their property. They built an ice rink and did some· grading and leveling of the land. The plaintiffs also had a commercial structure on their land. At a certain point, the plaintiffs removed a dirt pile from the rear of their property. For the next several years, the plaintiffs' property was flooded as a result of surface waters flowing onto it from the defendants' adjoining land. On appeal, the dispositive question was under what circumstances could the defendants be found liable for the flooding because of their use or alteration of their property.

To resolve that point, the California Supreme Court first reviewed the diverse theories governing liability for property damage caused by surface water. ■ "Water diffused over the surface of land . . . and resulting from rain . . . is known as 'surface water.' It is thus distinguishable from water flowing in a fixed channel [or] identifiable body, such as a river or lake." (*Keys, supra,* 64 Cal.2d at p. 400.) California had always followed the civil law rule. That principle meant "the owner of an upper, or dominant, estate is entitled to discharge surface water from his land *as the water naturally flows.* As a corollary to this, the upper owner is liable for any damage he causes to adjacent property by the discharge of water *in an unnatural manner.* In essence, each property owner's duty is to leave the natural flow of surface water undisturbed." (*Id.* at pp. 405-406, italics added.) One of the issues raised in *Keys* was whether this rule still had vitality in developed urban areas. (*Id.* at pp. 406-407.) The court concluded it did subject to modification (*Id.* at p. 411; see also *Burrows v. State of California* (1968) 260 Cal.App.2d 29, 32-33 [66 Cal.Rptr. 868], analyzing the legal significance of *Keys.*)

The *Keys* court first held that tort law, as opposed to the· law of real property, provided the proper analytical context in which to resolve the question. (*Keys, supra,* 64 Cal.2d at pp. 407-408.) The court then reasoned:

"[N]o rule can be applied by a court of justice with utter disregard for the peculiar facts and circumstances of the parties and properties involved. No party, whether an upper or a lower landowner, may act arbitrarily and unreasonably in his relations with other landowners and still be immunized from all liability.

"It is therefore incumbent upon every person to take reasonable care in using his property to avoid injury to adjacent property through the flow of surface waters. Failure to exercise reasonable care may result in liability by an upper to a lower landowner. It is equally the duty of any person threatened with injury to his property by the flow of surface waters to take reasonable precautions to avoid or reduce any actual or potential injury.

"*If the actions of both the upper and lower landowners are reasonable, necessary, and generally in accord with the foregoing, then the injury must necessarily be borne by the upper landowner who changes a natural system of drainage, in accordance with our traditional civil law rule.*

"In the total spectrum of American case law, California may be considered a devotee of a modified civil law rule. Our rule has the advantage of predictability, in that responsibility for diversion of surface waters is fixed, all things being relatively equal. On the other hand, we cannot permit certainty of liability to be an excuse for tolerating unreasonable conduct by any landowners in modern society, whether they be upper or lower, urban or rural. Consistent and wise application of the California rule encourages profitable and enjoyable use of property, and provides a basis for mutual resolution of problems caused by errant surface waters.

"*We reiterate that the question is not one of strict negligence accountability*, although we agree generally with [the superceded] Court of Appeal opinion in this case [citation] that 'an owner should not escape liability when he is negligent.' *The question is reasonableness of conduct.*

"What constitutes reasonable conduct is not always easy to ascertain. . . . [T]he question of reasonableness of conduct is not related solely to the actor's interest, however legitimate; it must be weighed against the effect of the act upon others. (For a discussion of the elements of liability, see Rest., Torts, §§ 822-833.)

"The issue of reasonableness becomes a question of fact to be determined in each case upon a consideration of all the relevant circumstances, including such factors as the amount of harm caused, the foreseeability of the harm which results, the purpose or motive with which the possessor acted, and all

other relevant matter. (*Armstrong* v. *Francis Corp.* [(1956) 20 N.J. 320 [120 A.2d 4, 59 A.L.R.2d 413]].) It is properly a consideration in land development problems whether the utility of the possessor's use of his land outweighs the gravity of the harm which results from his alteration of the flow of surface waters. (*Sheehan v. Flynn* (1894) 59 Minn. 436 [61 N.W. 462, 26 L.R.A. 632].) The gravity of harm is its seriousness from an objective viewpoint, while the utility of conduct is its meritoriousness from the same viewpoint. (Rest., Torts, § 826.) If the weight is on the side of him who alters the natural watercourse, then he has acted reasonably and without liability; if the harm to the lower landowner is unreasonably severe, then the economic costs incident to the expulsion of surface waters must be borne by the upper owner whose development caused the damage. *If the facts should indicate both parties conducted themselves reasonably, then courts are bound by our well-settled civil law rule.*" (*Keys, supra,* 64 Cal.2d at pp. 408-410, italics added.)

In *Burrows v. State of California, supra,* 260 Cal.App.2d 29, the appellate court gave the following summary of the rules "expressly laid down in *Keys:* 1. If the upper owner is reasonable and the lower owner unreasonable, the upper owner wins; 2. If the upper owner is unreasonable and the lower owner reasonable, the lower owner wins; and 3. *If both the upper and lower owner are reasonable, the lower owner wins also.*" (*Id.* at pp. 32-33, italics added.) A footnote to that paragraph states: "It is not clear from *Keys* whether the Supreme Court left room for the fourth possible permutation, namely a situation where both are unreasonable." (*Id.,* at p. 33, fn. 3.) A subsequent decision from Division Five of this court answered that inquiry as follows: "The person [lower owner] who *may* minimize damage and fails to do so cannot recover for the excess damage occurring. . . . [¶] While a lower landowner's failure to take affirmative action to protect his property does not necessarily mean he is denied relief against the upper landowner, his lack of action may be relevant in computing the damages to which he is entitled." (*Sheffet v. County of Los Angeles* (1970) 3 Cal.App.3d 720, 730 and 731, fn. 8 [84 Cal.Rptr. 11].)

B. *The Court's Submission of Instructions on Negligence and Contributory Negligence Was Prejudicial Error*

 Plaintiff contends the trial court erred in refusing to submit her instructions, all of which were based upon the case law discussed above, and in using instead instructions embodying general negligence principles. The contention is well taken.

Defendants first argue plaintiff's special instructions were properly refused because "water was not diverted from its natural flow by [defendants]. . . . Here, there has been no alteration of the natural water flow.

Experts testified that the water flow was the same as it had always been. . . . [Defendants] testified they did nothing to the backyard but refresh the grass. . . . [¶] All of the cases using the evaluation as described in <u>Keyes</u> [*sic*] involved much more than a simple refreshing of a backyard as in the case at bar."

This argument is not persuasive for two reasons.

The first reason is that it incorrectly suggests that liability can only be imposed if a defendant either engages in conduct factually identical to that discussed in published cases or conduct which defendants characterize as "dramatic alteration of the ground terrain. . . ." That is far too crabbed of a view of the law. The significant point of *Keys* and its progeny is that these cases set forth the principles to be used when a defendant's actions alter the natural flow of water onto the land of another, not that these cases set forth the only fact patterns in which a defendant can be held liable. Whether *our defendants* used or altered their property in a manner that affected the discharge of surface waters on to plaintiff's land was a question of fact for the jury to decide.[2]

This takes us to the second reason defendants' argument is not persuasive. It consists of a one-sided recitation of the evidence when, in fact, the evidence was in conflict about the extent of the landscaping defendants did in 1981 and its effects on water drainage. Whether plaintiff had discharged her burden of proving by a preponderance of the evidence the predicate facts for imposition of liability was a question for a *properly instructed* jury to determine. And therein lies the nub of the problem. The jury was *not* properly instructed.

The submitted instructions essentially defined the issues as an ordinary negligence action. That, however, is not the correct approach in this particular fact pattern. As our Supreme Court made clear in *Keys*, "the question is not one of strict negligence accountability, . . . [t]he question is reasonableness of conduct." (*Keys, supra,* 64 Cal.2d at p. 409.)

While reasonableness is also at the heart of a negligence claim, its application to this type of fact pattern yields different results. For instance, in this case were the jury to find that both defendants and plaintiff acted reasonably, defendants would still be liable (assuming a finding they had altered the natural flow of waters). (*Keys, supra,* 64 Cal.2d at pp. 409 & 410; *Burrows v. State of California, supra,* 260 Cal.App.2d 29, 33.) This is in marked distinction to a traditional negligence action. If the jury found the

---

[2]In closing argument, each party argued this point.

defendants had acted reasonably and the plaintiff was free of contributory fault, the defendants would win, notwithstanding the fact defendants' actions had injured the plaintiff. The problem is that the submitted instructions essentially directed the jury to use the latter analysis when, in fact, the former analysis was required. In other words, the instructions *improperly* absolved defendants of liability if the jury found their actions reasonable, a result inconsistent with precedent.

Plaintiff is also correct that the court erred in submitting a contributory negligence instruction. In *Western Salt Co. v. City of Newport Beach* (1969) 271 Cal.App.2d 397 [76 Cal.Rptr. 322], the defendant urged contributory negligence because the plaintiff failed to take affirmative action prior to the flooding to prevent its property from the potential damage. The trial court submitted instructions on that point. The issue before the Court of Appeal was whether contributory negligence was a viable defense in light of *Keys, supra,* 64 Cal.2d 396. The court concluded it was not. ■ It held: "It is not contributory negligence for a landowner or possessor to continue to make use of his property in any lawful manner even though he may know or suspect that such use may be interfered with by water carelessly diverted to his property by a neighbor. [Citation.] He is under no duty to anticipate that his land will be flooded by the negligence of a neighbor; he is not obliged to protect his land by dam, checks or otherwise against such flooding, and failure on plaintiff's part so to do does not constitute contributory negligence." (*Western Salt Co., supra,* 271 Cal.App.2d at p. 401.) The appellate court then noted a fact pattern in which a plaintiff could be liable for contributory negligence: "[W]here he causes the diversion of water resulting in the inundation of his property [citation] . . . ." (*Id.* at p. 402.) The court reasoned that the language in *Keys* about the duty of the lower owner to take reasonable steps to avoid injury applied only to actions involving *intentional diversion* of surface waters because in *Keys* the flooding had occurred over a three-year period. (*Id.* at pp. 403-404.) A defendant's action causing the flooding can be characterized as intentional " 'when the conduct is continued after the actor knows that the invasion is resulting from it . . . .' [Citation.]" (*Id.* at p. 403.) In this case, plaintiff did not rely upon a theory of an intentional invasion. Accordingly, the instruction was error. In sum, "*Keys* did not change the rule precluding contributory negligence as a defense in surface water cases." (*Id.* at p. 404.)

The correct way to focus on a plaintiff's action is in the context of evaluating the reasonableness of that individual's conduct, not by pigeonholing it into the rubric of contributory negligence. "Reasonable conduct may or may not require affirmative action by the lower owner, depending upon all the circumstances. The social utility of the upper owner's conduct must be

weighed against the burden that such conduct would impose on the lower owner. More often than not, the lower owner's unreasonable conduct will consist not of his failure to take affirmative steps to protect his property, but of affirmative conduct increasing the danger to his property." (*Sheffet v. County of Los Angeles, supra,* 3 Cal.App.3d 720, 730.)

In regard to the question of the effect of this instructional error, this case is essentially identical to *Marment v. Castlewood County Club* (1973) 30 Cal.App.3d 483 [105 Cal.Rptr. 853], a decision neither party has cited to this court. There, the plaintiffs sued for damages resulting from diversion of surface waters. There was an evidentiary conflict as to whether the defendants' actions caused the damages. The trial court "instructed at length upon negligence [and contributory negligence] as it is usually defined in personal injury actions." (*Id.* at p. 485.) The jury returned a defense verdict and, as in this case, utilized a general verdict, thereby rendering it impossible for a reviewing court to determine the basis of the jury's decision. The appellate court held the utilized instructions were legally deficient because *Keys* makes clear reasonableness of conduct, not negligence, is the question. It explained: "The distinction is emphasized in *Keys* by language requiring consideration of such factors as the amount of harm caused, the foreseeability of such harm, the purpose or motive of the diverter and a comparative weighing of the utility of the diversion against the gravity of the harm caused by it. [Citation.] *These elements are not included or suggested in the trial court's instructions defining the nature and effect of negligence and contributory negligence in the usual personal injury context.*" (*Ibid.* italics added.)

The *Marment* court's ultimate analysis and disposition applies equally to this case. That court wrote: "We conclude that the instructions, in addition to emphasizing 'strict negligence accountability,' in contravention of the *Keys* rule, left the jury without any understanding of the true rule and afforded no basis for any verdict based upon the law as stated in *Keys.* We do not, of course, suggest a result which should be reached. We must reverse in order to permit a fact finder adequately aware of the basic law to reach a verdict applying the true rule as laid down in *Keys.*" (*Marment v. Castlewood County Club, supra,* 30 Cal.App.3d at p. 486.)

### C. *Instructions on Nuisance*

Plaintiff also contends that the court misinstructed on nuisance.[3] Although we have concluded retrial is required because of the negligence instructions,

---

[3]The jury was also instructed about a trespass theory but no claim of instructional error is made in that regard.

we address this issue in the event plaintiff again proceeds on a nuisance theory.

Plaintiff submitted an instruction defining nuisance. Over plaintiff's objection, the court modified the instruction to add the word "willfully." As given, the instruction reads: "The plaintiff also seeks to recover damages based upon a claim of nuisance. The essential elements of nuisance are: [¶] 1. Plaintiff owned or occupied real property; [¶] 2. Defendants *willfully* used defendants' property in a way that either; [¶] a) injured plaintiff's health; or [¶] b) obstructed plaintiff's free use of her property, so as to interfere with her comfortable enjoyment of life or property." (Italics added.)

In addition, the court submitted, over plaintiff's objection, CALJIC No. 1.20 to define "willfully." It provides: "The word 'willfully' when applied to the intent with which an act is done or omitted means with a purpose or willingness to commit the act or to make the omission in question. The word 'willfully' does not require any intent to violate the law, or to injure another, or to acquire any advantage."

■ Plaintiff now contends this modification was error because it "mistakenly limited the nuisance claim to an intentional tort." The contention is well taken.

"Although the central idea of nuisance is the unreasonable invasion of this interest [in the use and enjoyment of property] and not the particular type of conduct subjecting the actor to liability, liability nevertheless depends on some sort of conduct that either directly and unreasonably interferes with it or creates a condition that does so. [Citations.] 'The invasion may be intentional and unreasonable. It may be unintentional but caused by negligent or reckless conduct; or it may result from an abnormally dangerous activity for which there is strict liability. On any of these bases the defendant may be liable. On the other hand, the invasion may be intentional but reasonable; or it may be entirely accidental and not fall within any of the categories mentioned above. In these cases there is no liability.' [Citations.]" (*Lussier v. San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 100 [253 Cal.Rptr. 470].)

At this juncture there is no need for us to fashion the appropriate instructions defining nuisance. The matter will be retried and plaintiff will be required to prove her case. Based upon the evidence presented and the specifics of her theory of her nuisance claim, the trial court should submit appropriate instructions, bearing in mind nuisance is not limited to intentional conduct.

## D. *Evidentiary Contentions*\*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### Disposition

The judgment is reversed to permit retrial before a properly instructed jury. Appellant Diana Gdowski to recover her costs on appeal.

Hastings, J., and Curry, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 14, 2001.

---

\*See footnote, *ante*, page 1395.