[No. D036980. Fourth Dist., Div. One. July 25, 2002.]

RANCHO VIEJO, LLC, Plaintiff and Appellant, v.
TRES AMIGOS VIEJOS, LLC, Defendant and Respondent.

552

554

COUNSEL

Best Best & Krieger, James B. Gilpin and Melissa W. Woo for Plaintiff and Appellant.

Sachse, James & Lopardo, Stephen V. Lopardo for Defendant and Respondent.

OPINION

O'ROURKE, J.—Appellant Rancho Viejo, LLC, sued respondent Tres Amigos Viejos, LLC, for damages after water imported by respondent for irrigation flowed onto and damaged appellant's adjoining property. The trial court granted summary judgment in favor of respondent on the ground appellant's causes of action were barred by Civil Code section 3482.5,[1] which exempts prescribed agricultural activities from nuisance liability. Appellant contends (1) its causes of action for trespass and failure to contain irrigation water are not subject to section 3482.5's exemption; (2) section 3482.5 was not intended to apply to circumstances where the adjoining properties were originally a single parcel that was subdivided into urban use by the original owner; and (3) assuming section 3482.5 was applicable to the facts, appellant raised triable issues of material fact preventing summary judgment based on the statute as a complete defense. We conclude the court correctly applied section 3482.5 to appellant's causes of action, and appellant has not demonstrated the existence of any material factual issue as to respondent's ability to prove its activities fall within the statute. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We set forth the undisputed facts from the parties' documents supporting their moving and opposing papers (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 327 [100 Cal.Rptr.2d 352, 8 P.3d 1089]) and state other facts and draw inferences from them in the light most favorable to appellant. (Code Civ. Proc., § 437c subd. (c); *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App. 4th 1509, 1520 [80 Cal.Rptr.2d 94]; *Van Dyke v. S.K.I., Ltd.* (1998) 67 Cal.App.4th 1310, 1313, fn. 2 [79 Cal.Rptr.2d 775].)

Edker and Blanche Pope owned 500 acres of real property located in the San Luis Rey River Valley in North San Diego County, otherwise known as

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

the Pope Ranch. In or about 1984, the Popes explored developing portions of the property into residential lots and a lake.[2] A specific plan prepared in or about that time proposed devoting approximately 115 acres of the Pope Ranch to continued agricultural uses, including 110 acres for avocado production on sloping hills on the eastern boundary of the property.

On December 1, 1997, the Popes sold appellant the portion of the Pope Ranch commonly known as the Lake Rancho Viejo Subdivision (the lower property). The lower property is largely within a relatively flat alluvial plain and is flanked on the east by Lancaster Mountain. At the time of the sale, it contained vacant fields and a 30-year-old commercial orange grove with approximately 500 trees. Those trees were irrigated and harvested for commercial purposes on a regular basis. The Popes retained ownership of the remaining 96 acres situated on a hill located on the eastern boundary of the lower property (the upper property). The upper property contained an orange grove as well as an avocado grove consisting of approximately 6,600 trees that since the mid-1970's had been commercially farmed on a continuous basis. Those groves have been irrigated by pumping water uphill from wells containing water from the adjacent San Luis Rey River. Although the upper property is located in a municipal water district, district water is not available to the owners because there is no water meter for the groves. The well water is saltier than metropolitan water, and thus in order to dilute the water's salinity, more well water is applied to the trees than if metropolitan water were available. For years, rainwater and natural runoff has flowed down from the upper property onto the lower property, as has irrigation water from the upper property and from a grove owned by third parties above the upper property.

In 1998, appellant began preparing the lower property for development. It cut down the orange trees and graded building pads directly beneath the avocado grove on the upper property. Appellant excavated cut slopes into the hills along the boundary between the upper and lower properties. During the grading, appellant encountered water seepage on the northeastern section

---

[2]Neither party made any request for rulings on the numerous written evidentiary objections nor did the trial court make any such rulings. Because counsel failed to obtain rulings on their objections, they are waived; this court must view all of the evidence as having been admitted. (Code Civ. Proc., § 437c, subds. (b) & (c); *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66 [99 Cal.Rptr.2d 316, 5 P.3d 874]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].) The record contains a copy of the "Specific Plan for Lake Rancho Viejo" prepared for The Wellington Group, an entity that is not a party nor has been identified by the parties as associated with the Popes. The document does not reflect the date of its original preparation, however it indicates it was revised in March 1984. We infer favorably to appellant that the Popes were aware of and supported the proposed development as they were the property owners at that time.

of the property and observed water streams and water in canyons on several lots. The mass grading was completed between April and September of 1998.

In November 1998, the Popes sold the upper property to respondent. Respondent's sole business is commercial avocado farming. It continued to irrigate the upper property in a manner identical to the way it was irrigated before its purchase. In May 1999, appellant discovered water cascading and seeping from the cut slopes in various lots as a result of respondent's irrigation of the upper property, causing damage to and destabilization of the slope. It requested respondent solve the problem by either reducing its irrigation or installing water control systems to prevent the runoff. In June 1999, after respondent refused its request, appellant installed an additional subdrain system at its own expense to remedy the runoff.

Appellant sued respondent seeking damages and injunctive and declaratory relief under causes of action for failure to contain irrigation water, trespass and nuisance. Respondent moved for summary judgment on the ground section 3482.5 provided a complete defense to appellant's causes of action. In response, appellant voluntarily dismissed its nuisance cause of action without prejudice.

Relying upon *Souza v. Lauppe* (1997) 59 Cal.App.4th 865 [69 Cal.Rptr.2d 494] (*Souza*), the trial court granted summary judgment in respondent's favor on the ground that section 3482.5 barred appellant's causes of action.[3] Following oral arguments and the parties' submission of supplemental briefing, the trial court confirmed its ruling. It entered judgment in respondent's favor.

## DISCUSSION

### I. *Standard of Review*

■ A defendant moving for summary judgment based upon an affirmative defense, as here, bears an overall burden of persuasion that there is a complete defense to the plaintiff's action, that is, he must persuade the court

---

[3]In part, it ruled: "[R]egardless of how they are denominated, plaintiff's claims for relief are 'in fact based on a theory of nuisance' because they allege the violation of a single primary right, i.e., the plaintiff's right to the unimpaired ownership and undisturbed enjoyment of their premises." It ruled appellant failed to establish triable issues as to whether respondent's activities were (1) agricultural; (2) conducted "consistent with proper and accepted customs and standards as established and followed by similar agricultural operations in the same locality"; and (3) in operation for more than three years.

there is no material fact for a reasonable trier of fact to find as to that defense. (See *Aguilar v. Atlantic Richfield* Co. (2001) 25 Cal. 4th 826, 850, fn. 11 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) In meeting its overall burden of persuasion, the defendant has the initial burden of production entailing him to "present[] . . . 'evidence' " (*id.* at p. 850, citing Evid. Code, § 110) supporting a prima facie showing of the nonexistence of any triable issue of material fact as to the defense. (*Aguilar*, at p. 850.) Once the defendant has met that initial burden of production, the burden shifts to the plaintiff to present evidence showing the existence of a triable issue of one or more material facts as to that defense. (*Ibid.*; § 437c, subd. (*o*)(2).) The plaintiff may not rely upon the mere allegations or denials of its pleading to show a triable issue of material fact exists. (§ 437c, subd. (*o*)(2); *Aguilar*, at p. 849; *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 & fn. 4 [63 Cal.Rptr.2d 291, 936 P.2d 70]; *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360].) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof" at trial. (*Aguilar*, at p. 850.)

■ On appeal, this court independently assesses the correctness of the trial court's ruling, applying the same legal standard that governs the trial court. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404 [87 Cal.Rptr.2d 453, 981 P.2d 79]; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 60, 65 [65 Cal.Rptr.2d 366, 939 P.2d 766].) We construe respondent's evidence strictly and appellant's evidence liberally, and resolve any doubts as to the propriety of granting the motion in favor of appellant as the opposing party. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].) We affirm the ruling if it is correct on any ground, regardless of the trial court's stated reasons. (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

II. *Section 3482.5 Applies to Appellant's Causes of Action Seeking Damages Caused by Escaping Irrigation Waters*

Section 3482.5 was added in 1981 by the enactment of Assembly Bill No. 585 (1981-1982 Reg. Sess.) (hereafter Assembly Bill 585). (Stats. 1981, ch. 545, § 1, p. 2192.) Subdivision (a)(1) of the statute provides: "No agricultural activity, operation, or facility, or appurtenances thereof, conducted or maintained for commercial purposes, and in a manner consistent with proper and accepted customs and standards, as established and followed by similar agricultural operations in the same locality, shall be or become a nuisance, private or public, due to any changed condition in or about the locality, after

it has been in operation for more than three years if it was not a nuisance at the time it began."

■ Based in part on the statute's literal language, appellant contends section 3482.5 does not apply to trespasses or other causes of action arising from the discharge of irrigation water onto another's land. It focuses on the distinction between the torts of nuisance and trespass, pointing out the former is an interference with the use and enjoyment of land not requiring interference with possession, and the latter an invasion of interest in the exclusive possession of land. Appellant maintains the statute's legislative history demonstrates the Legislature did not intend to confer absolute immunity for agricultural activities; it only intended to protect farmers from "traditional" farming operations causing noise, odors, dust or "items otherwise related to the enjoyment of one's land" as opposed to activities causing an adjoining landowner property damage as a result of a physical invasion. It asserts, "Thus, while Section 3482.5 may bar a claim for nuisance against a farmer for the smell of his cows, it will not shield him from liability if a cow escapes and trespasses onto a neighbor's property, thereby destroying or damaging the neighbor's property."

Appellant's argument is based on a misapprehension of nuisance law as well as an overly narrow reading of the statute. ■ "Our primary aim in construing any law is to determine the legislative intent. [Citation.] In doing so we look first to the words of the statute, giving them their usual and ordinary meaning." (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708]; *Souza, supra,* 59 Cal.App.4th at p. 871.) We need not construe statutory language when it is clear and unambiguous. (*Department of Fish & Game v. Anderson-Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554, 1562 [11 Cal.Rptr.2d 222].) Nevertheless, " ' "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' [Citations.]" (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ Secction 3482.5 broadly defines an agricultural activity, operation, or facility, or appurtenances thereof as used in subdivision (a)(1). Such matters "shall include, *but not be limited to,* the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural commodity, including timber, viticulture, apiculture, or horticulture, the raising of livestock, fur bearing animals, fish, or poultry, *and any*

*practices performed by a farmer or on a farm as incident to or in conjunction with those farming operations*, including preparation for market, delivery to storage or to market, or delivery to carriers for transportation to market." (§ 3482.5, subd. (e), italics added.)[4] By its plain language, section 3482.5 was intended to immunize farmers from nuisance liability for "*any* practices performed by a farmer or on a farm incident to . . . farming operations," (§ 3482.5, subd. (e), italics added) as long as the other conditions of the statute are met. Appellant does not, nor could it reasonably, argue that irrigation is not an agricultural activity or operation. Rather, it maintains the statute, by expressly limiting its protection to nuisance lawsuits, necessarily excludes such activities if they cause physical damage to adjoining or other properties.

Appellant's argument is fundamentally flawed because it fails to recognize that a nuisance is not limited to intangible intrusions upon land. (See *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1136 [281 Cal.Rptr. 827] (*Mangini*) ["Numeous cases have . . . sanctioned recovery on a nuisance theory for direct injury to a plaintiff's property."].) As the court pointed out in *Mangini*, California nuisance law is a creature of statute, specifically section 3479, which defines a nuisance in part as " '[a]nything which is injurious to health, or is indecent or offensive to the senses, *or an*

---

[4]Section 3482.5, subdivision (a)(2) provides: "No activity of a district agricultural association that is operated in compliance with Division 3 (commencing with Section 3001) of the Food and Agricultural Code, shall be or become a private or public nuisance due to any changed condition in or about the locality, after it has been in operation for more than three years if it was not a nuisance at the time it began. This paragraph shall not apply to any activities of the 52nd District Agricultural Association that are conducted on the grounds of the California Exposition and State Fair, nor to any public nuisance action brought by a city, county, or city and county alleging that the activities, operations, or conditions of a district agricultural association have substantially changed after more than three years from the time that the activities, operations, or conditions began."

The remaining subdivisions of the statute provide: "(b) Paragraph (1) of subdivision (a) shall not apply if the agricultural activity, operation, or facility, or appurtenances thereof obstruct the free passage or use, in the customary manner, of any navigable lake, river, bay, stream, canal, or basin, or any public park, square, street, or highway. [¶] (c) Paragraph (1) of subdivision (a) shall not invalidate any provision contained in the Health and Safety Code, Fish and Game Code, Food and Agricultural Code, or Division 7 (commencing with Section 13000) of the Water Code, if the agricultural activity, operation, or facility, or appurtenances thereof constitute a nuisance, public or private, as specifically defined or described in any of those provisions. [¶] (d) This section shall prevail over any contrary provision of any ordinance or regulation of any city, county, city and county, or other political subdivision of the state. However, nothing in this section shall preclude a city, county, city and county, or other political subdivision of this state, acting within its constitutional or statutory authority and not in conflict with other provisions of state law, from adopting an ordinance that allows notification to a prospective homeowner that the dwelling is in close proximity to an agricultural activity, operation, facility, or appurtenances thereof and is subject to the provisions of this section consistent with Section 1102.6a." (§ 3482.5, subds. (b), (c), (d).)

*obstruction to the free use of property*, so as to interfere with the comfortable enjoyment of life *or property* . . . .' " (*Mangini,* at p. 1134, citing § 3479, italics added.) Further, a person *"whose property is injuriously affected,* or whose personal enjoyment is lessened by a nuisance" may sue for damages and abatement under Code of Civil Procedure section 731. (Code Civ. Proc. § 731, italics added.) Indeed, "[t]he typical and familiar nuisance claim involves an activity or condition which causes damage or other interference with the enjoyment of adjoining or neighboring land." (*Wilshire Westwood Associates v. Atlantic Richfield Co.* (1993) 20 Cal.App.4th 732, 745 [24 Cal.Rptr.2d 562].) Witkin recognizes that "[a]ctual physical interference with land use constitutes the most obvious and common type of nuisance." (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 126, p. 807.)

Thus, many activities will give rise to liability both as trespass and a nuisance, if they result in the violation of a person's right of exclusive possession of land, and also constitute an unreasonable and substantial interference with the use and enjoyment of the land.[5] (See *Mangini, supra,* 230 Cal.App.3d at pp. 1136-1137 [citing California cases that recognize invasions of property otherwise amounting to a trespass may also constitute a nuisance under the statutes]; *KFC Western, Inc. v. Meghrig* (1994) 23 Cal.App.4th 1167, 1178-1181 [28 Cal.Rptr.2d 676] [plaintiffs could state

---

[5] " 'A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it . . . . A nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with the possession.' " (*Wilson v. Interlake Steel Co.* (1982) 32 Cal.3d 229, 233 [185 Cal.Rptr. 280, 649 P.2d 922], quoting from Rest.2d Torts, § 821D, com. d, p. 101; cf. Prosser & Keeton, Torts (5th ed. 1984) § 87, p. 622; 11 Witkin, Summary of Cal. Law, *supra,* Equity, § 125, pp. 806-807.) Speaking in terms of primary rights, a theory with a "fairly narrow field of application," (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1146 [95 Cal.Rptr.2d 701, 998 P.2d 403] (*Hamilton*); see also *Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1239 [65 Cal.Rptr.2d 25]), we would reach the same conclusion as the trial court. " '[A] "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] A pleading that states the violation of one primary right in two causes of action contravenes the rule against "splitting" a cause of action.' " (*Hamilton,* at p. 1145, quoting *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 [34 Cal.Rptr.2d 386, 881 P.2d 1083].) If we were to extend primary rights principles to this case, we would conclude appellant's original causes of action for nuisance and trespass both addressed the same legal wrong and injury predicated on the same operative facts—interference with unimpaired ownership and undisturbed enjoyment of property—and thus were simply alternative legal theories for the invasion of a single primary right. (Cf. *Lussier v. San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 104 [253 Cal.Rptr. 470] [claims for nuisance and negligence were alternative legal theories for redressing the same primary right to undisturbed enjoyment of one's property and land]; *Van Zyl v. Spiegelberg* (1969) 2 Cal.App.3d 367, 372 [82 Cal.Rptr. 689] [plaintiff's complaint for nuisance and negligence alleged one cause of action because it alleged one primary right: "plaintiff's right to the unimpaired ownership and undisturbed enjoyment of his premises"].)

causes of action for both continuing nuisance and continuing trespass against former owners of property based upon soil contamination from underground storage tanks]; see also *Resolution Trust Corp. v. Rossmoor Corp.* (1995) 34 Cal.App.4th 93, 99 [40 Cal.Rptr.2d 328] ["Failure to clean up contamination causing ongoing damage to property has been held to constitute such [a continuing] nuisance. [Citations.] Likewise, the same conduct gives rise to an action for continuing trespass"]; 47 Cal.Jur.3d (2001) Nuisances, § 3; Rest.2d Torts, § 821D, com. e, p. 102.[6]) ▪ We therefore reject appellant's attempt to exclude respondent's conduct from the reach of the statute by distinguishing between trespass and nuisance theories on the basis of physical invasion and damage to property.

Moreover, appellant's interpretation of the statute would frustrate its apparent purpose. We concede that, read literally, the statute immunizes specified agricultural enterprises only as against claims based upon a theory of public or private nuisance and not against claims based on other liability theories, such as trespass. But we cannot accept appellant's position that the Legislature intended by this reference to focus strictly upon the pleaded theory of liability and reject immunity for an accepted and established farming activity amounting to a nuisance, simply because it is pleaded as a trespass. Our review of the legislative history provided by appellant demonstrates no such intent. Indeed, a letter from the sponsor of Assembly Bill 585, Assemblyman John Thurman, urging the speaker of the Assembly to support the measure, indicates an intention contrary to such a narrow reading of the statute. In that letter, Assemblyman Thurman stated: "AB 585 is an important step toward eliminating suits by individuals who have moved to a new housing development 'in the country' and find the long-established farm bordering their back fence offends their senses. Suits against agricultural operations for dust, wind machine or tractor noise, livestock or poultry

---

[6]Comment e of section 821D of the Restatement Second of Torts more fully explains: "There may . . . be some overlapping of the causes of action for trespass and private nuisance. An invasion of the possession of land normally involves some degree of interference with its use and enjoyment and this is true particularly when some harm is inflicted upon the land itself. The cause of action for trespass has traditionally included liability for incidental harms of this nature. If the interference with the use and enjoyment of the land is a significant one, sufficient in itself to amount to a private nuisance, the fact that it arises out of or is accompanied by a trespass will not prevent recovery for the nuisance, and the action may be maintained upon either basis as the plaintiff elects or both. Thus, the flooding of the plaintiff's land, which is a trespass, is also a nuisance if it is repeated or of long duration; and when the defendant's dog howls under the plaintiff's window night after night and deprives him of sleep, there is a nuisance whether the dog is outside the plaintiff's land or has entered upon it, and the defendant's negligence in looking after the dog would make him liable either for trespass if there was an entry or for nuisance whether there was entry or not. [¶] The two actions, trespass and private nuisance, are thus not entirely exclusive or inconsistent, and in a proper case in which the elements of both actions are fully present, the plaintiff may have his choice of one or the other, or may proceed upon both." (Rest.2d Torts, § 821D, com. e, p. 102.)

smells *and other things commonly associated with the operation of an agricultural enterprise* are becoming more prevalent as urban development reaches out to meet agricultural areas. AB 585 will stop this dangerous cycle by allowing agriculture to operate without undue pressure from urbanization. Keeping agricultural land in agricultural use is the goal." (Chairman of the Assem. Com. on Agriculture John E. Thurman, letter to Speaker of the Assem. Willie L. Brown, Jr., May 5, 1981, italics added.) Assemblyman Thurman sought broad protection for traditional farming practices performed in conjunction with long-standing commercial operations when neighboring properties are developed into residential or urban use. The history of Assembly Bill 585 prepared by the Senate Committee on the Judiciary explains the bill's purpose is to "attempt to forestall some of the loss of prime agricultural land on the outskirts of growing urban areas." It states: "The source of this bill and its supporters contend that the agricultural industry should be preserved and protected against the threat of nuisance liability, particularly where an agricultural enterprise has been in existence for a number of years, only to become subject to encroachment by a spreading city into the farmer's area."

Construing the statute in light of its legislative purpose compels us to reject a narrow reading that would turn upon the pleaded theory of liability, and adopt a reading that would further the preservation of ongoing, standard agricultural practices. If commercial agricultural activity qualifies as a nuisance and otherwise falls within section 3482.5, a plaintiff cannot avoid the immunity provided by the statute by simply recharacterizing or relabeling the conduct in the guise of trespass to bring it outside the ambit of the statute. This was implicitly recognized by the court of appeal in *Souza, supra,* 59 Cal.App.4th 865, where the trial court treated a complaint alleging causes of action for negligence and unlawful business practices in violation of Business and Professions Code section 17200 et seq. as in fact based on a theory of nuisance because they alleged the violation of a single primary right, "i.e., plaintiffs' right to the unimpaired ownership and undisturbed enjoyment of their premises." (*Souza,* at p. 870.) *Souza* involved irrigation, the very agricultural activity involved here, except as to rice crops. For approximately five years, the parties, commercial farmers with bordering farm lands, farmed rice on their land. (*Id.* at p. 869.) After the plaintiffs shifted to planting row crops, they noticed when defendants' rice fields were flooded, the portion of their land closest to the defendants' became so wet that it could not be farmed. (*Ibid.*) The plaintiffs sued defendants, seeking an injunction and damages for negligence and unfair business practices, and the defendants successfully moved for summary judgment on the ground plaintiffs' lawsuit was barred by section 3482.5. (*Souza,* at pp. 870-871.) The issue before the appellate court in *Souza* was whether the statute applied to

an action against a commercial entity by another commercial entity as opposed to a non-agricultural plaintiff; the court concluded the statute's language was unambiguous and broadly applied to such circumstances. (*Id.*, at pp. 873-874.)

Appellant seeks to distinguish *Souza* on the basis that the invasion, the flooding of rice crops, was continuing in nature whereas here, the water intrusion occurred only when respondent irrigated its land. The distinction is baseless. Irrigation is an ongoing operation in commercial farming generally, and was regularly conducted in this case according to the undisputed testimony of respondent's irrigation worker, Salvador Munoz.[7] Even where the watering is an occasional leaching, it is still a practice that is repeated on a regular basis. As for appellant's other attempts to distinguish *Souza*, we agree the case does not address the precise issue before us. But we need not rely upon *Souza* for this aspect of our holding; we independently support our conclusion by the undisputed facts of this case revealing that appellant's causes of action alleging property damage from irrigation water intrusion fall within the literal language of the statute.

Decisions from Washington State involving Washington's right-to-farm act do not compel a different interpretation of California's law. Appellant's assertion that we should follow those courts' reasoning is based on the premise that the Washington and California statutes are similar, a position we find without merit. In fact, the Washington act, Revised Code of Washington sections 7.48.300 to 7.48.310 and 7.48.905, is significantly different from California's law in that, among other things, it contains an express damages savings clause: " 'Nothing in this section shall affect or impair any right to sue for damages.' "[8] (*Buchanan v. Simplot Feeders Limited Partnership* (1998) 134 Wash.2d 674 [952 P.2d 610, 613] (*Buchanan*).) In *Buchanan*, the Washington Supreme Court considered the language of the Washington act and rejected the plaintiffs' contention that the damages clause permitted them to recover damages under a nuisance theory as well as other

[7]See footnote 9, *post.*

[8]In full, Revised Code of Washington section 7.48.305 provides: "Notwithstanding any other provision of this chapter, agricultural activities conducted on farmland and forest practices, if consistent with good agricultural and forest practices and established prior to surrounding nonagricultural and nonforestry activities, are presumed to be reasonable and shall not be found to constitute a nuisance unless the activity has a substantial adverse effect on the public health and safety. [¶] If those agricultural activities and forest practices are undertaken in conformity with all applicable laws and rules, the activities are presumed to be good agricultural and forest practices not adversely affecting the public health and safety for purposes of this section and RCW 7.48.300. An agricultural activity that is in conformity with such laws and rules shall not be restricted as to the hours of the day or day or days of the week during which it may be conducted. [¶] Nothing in this section shall affect or impair any right to sue for damages."

tort theories, such as trespass. (952 P.2d at p. 617.) Further, the court found such an interpretation would "fully gut" the entire act: "If urban developers could invade an agricultural area and recover damages for nuisances arising from the normal operation of the farms, those farms would be forced out of operation nearly as quickly as if the farms were legally enjoined from conducting those activities." (*Ibid.*, italics omitted.) However, the court concluded, based on the Legislature's adoption of the damages clause, the statute did not govern activities that give rise to trespasses—those agricultural activities that interfere with a neighbor's actual possession of their property and cause it physical damage. (*Id.* at p. 618.)

California's statute does not expressly carve out damage claims. Moreover, as indicated, California law defines a nuisance as including those activities that intrude upon and cause physical damage to property. On that basis we would disagree with the reasoning of the Washington court to the extent it would give protection to farmers who are being sued for damages based on a nuisance theory, but not those who are being sued for the same damages based on a trespass theory. We decline to apply the reasoning of the Washington court to the statute before us.

### III. *Section 3482.5 On its Face Applies Where Appellant Initiated Changed Conditions by Eliminating Existing Orange Groves and Grading Cut Slopes*

■ Appellant contends section 3482.5 does not apply to situations where a farmer subdivides his or her land and initiates the urbanization of portions of the property but continues to conduct agricultural activities on the remainder. It maintains the statute was enacted for the purpose of protecting farmers who are innocent victims of urbanization and to stem the removal of land from agricultural uses where residential development moves in next door to a longstanding agricultural activity; that given these goals, the statute cannot immunize a farmer who profits from urban development on his land yet also seeks to protect his continued agricultural activity.

We need not address the broad question framed by appellant. Rather, we limit our assessment of the statute's application to the undisputed facts before us. Those facts demonstrate that while the Popes sold the upper and lower properties cognizant of the lower property's possible urbanization, in fact it was the appellant that took the steps to begin mass urban development, initiating the feasibility study for the proposed residential development even before it purchased the lower property. It is further undisputed that it was the appellant who, after purchasing the lower property, removed

orange groves that had been present for at least 30 years and excavated the cut slopes. Appellant admitted that before excavation, that property "was used for the agricultural purpose of a commercial orange grove." By virtue of these acts, appellant changed the condition of the lower property. Importantly, it is undisputed that the water intrusion problems occurred at the location of the slopes, and appellant has failed to contradict with any competent evidence the fact that its nuisance cause of action—seeking damages resulting from the water intrusion—did not accrue until it graded the slopes below the respondent's avocado grove. Finally, appellant fails to present competent evidence disputing the fact that respondent has not changed the watering practices of the upper property that had been in place since at least 1982.[9]

Under the circumstances, appellant's claims fall directly within the intent and unambiguous language of section 3482.5, which broadly immunizes established, traditional farming operations from becoming a nuisance due to "*any* changed condition in or about the locality." (§ 3482.5, subd. (a)(1), italics added; *Souza, supra,* 59 Cal.App.4th at pp. 872-874.) In *Souza,* the Court of Appeal rejected the plaintiff's claim that the words "any changed condition" were uncertain and needed interpretation by resort to legislative history. Instead, it found the use of "the word 'any' expresses an unambiguous legislative intent to broadly apply the statute." (*Souza, supra,* 59 Cal.App.4th at p. 873.) Thus, the court upheld application of section 3482.5 in instances where a commercial agricultural entity sues another commercial agricultural entity, holding the statutory language did not limit the statute's preclusive effect to actions commenced by nonagricultural plaintiffs. (*Souza,* at p. 874.) This case does not present such unique circumstances. Appellant is a residential developer and respondent a commercial farmer. Thus, we confront the very situation that appellant itself admits is the focus of the

[9]Respondent submitted the declaration of Salvador Munoz, who began working on the upper property in 1975 and who at the time of the motion was the person in charge of watering the avocado groves on the upper property. He averred he has been involved in watering the avocado groves since 1982 and that the grove has been irrigated since then on a regular basis. Munoz continued: "The amount of water varies depending on the temperature, rainfall, and needs of the trees. The only thing that has changed is who pays my paycheck. Today I am still in charge of watering [the upper property], and we do nothing different than we did in the past." In an attempt to counter that fact, respondent submitted the deposition testimony of Walter George, who stated he observed more surface water coming off the avocado groves from the upper property in 1999 than he had in 1998, when appellant was conducting grading operations. George's testimony does not address the watering practices of the upper property; indeed he indicated during the deposition that he had "no idea" of respondent's watering schedule. His testimony does not raise a disputed issue as to the fact respondent's watering practices, which may vary as a result of certain conditions including rainfall, are in any event consistent with watering practices that have been conducted since 1982.

statute. The statute does not limit its language to specified persons who must initiate the changed condition, nor does it specify the type or nature of the condition that must have changed. As the *Souza* court stated, "[e]ven if, as plaintiffs suggest, the Legislature did not have such an application in mind when it enacted section 3482.5, a different construction is not required because our interpretation of the statute is compelled by the plain meaning of its words, does not frustrate its apparent purpose, and does not result in absurd consequences." (*Souza,* at. p. 874.)

Nor does our conclusion change by the fact respondent is not the same entity that has been conducting avocado farming on the upper property for over three years. Respondent correctly points out that section 3482.5 is predicated on the duration of the agricultural operations, not the duration of the farmland's ownership. We would defeat the purpose of section 3482.5 if we found it applied only to farming operations continuously conducted by the same farmer for over three years before occurrence of the changed condition. The statute cannot be read to permit developers to enjoin a long-established farming operation as a nuisance simply because the farm was purchased and operated by a new owner.[10] Appellant's argument does not persuade us to reverse the court's application of section 3482.5 to its causes of action.

IV. *Appellant Failed to Meet Its Burden to Raise Issues of Material Fact as to the Elements of Section 3482.5*

■ "For section 3482.5, subdivision (a)(1) to apply, defendants must satisfy seven requisites: The activity alleged to be a nuisance must be (1) an agricultural activity (2) conducted or maintained for commercial purposes (3) in a manner consistent with proper and accepted customs and standards (4) as established and followed by similar agricultural operations in the same locality; the claim of nuisance arises (5) due to any changed condition in or about the locality (6) after the activity has been in operation for more than three years; and the activity (7) was not a nuisance at the time it began." (*Souza, supra,* 59 Cal.App.4th at pp. 874-875.)

(8) Appellant contends that, assuming section 3482.5 governs its causes of action, it raised material factual issues as to whether certain requisites of the statute are satisfied. Specifically, appellant maintains its evidence raises disputes as to (1) whether respondent's irrigation methods were conducted or

---

[10]We do not address cases where the evidence shows the new farmer changed the nature or extent of the agricultural operations. The evidence before us shows respondent continued to irrigate the upper property in a manner identical to the manner it was irrigated in the past.

maintained in a manner consistent with proper and accepted customs and standards followed by similar agricultural operations in the same locality; (2) whether its claim arose due to a changed condition in or about the locality; and (3) whether each parties' actions were reasonable. We disagree.

## A. Accepted and Customary Irrigation Methods

In support of its motion, respondent submitted the declaration of expert Richard Marrocco, who explained that virtually 100 percent of avocado groves in Southern California need massive amounts of irrigation to make up for the lack of rainfall because seasonal rainfall is insufficient to sustain the trees. Marrocco further explained avocado trees require occasional "leaching" in addition to regular irrigation to leach out traces of saline in the irrigation water, regardless of whether the water comes from wells or public sources. He opined, based on his decades of experience in the avocado and citrus industries, that respondent's "agricultural activity and operation is, and has been, conducted and maintained for a commercial purpose in a manner consistent with proper and accepted customs and standards, as established and followed by similar agricultural operations in the same locality." He concluded, "[Respondent's] grove has been in compliance with such customs and standards for many more than three years, probably 20 years."

Respondent met its burden of producing competent and admissible evidence establishing the customary character of its irrigation methods with Marrocco's declaration, which set forth Marrocco's personal knowledge and competency. (Code Civ. Proc., § 437c, subd. (d); e.g., *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1119-1120 [75 Cal.Rptr.2d 27].) Appellant does not contest Marrocco's expertise, and the expert explained that respondent's irrigation method was an approved and customary method for avocado growers without access to metropolitan water, and that it had been followed by similar agricultural operations for over three years.[11] Thus, the burden of production shifted to appellant to present admissible evidence raising a prima facie showing of any triable issue of material fact as to this element. (*Aguilar, supra*, 25 Cal.4th at p. 850.) Appellant failed to meet this burden.

---

[11] In part, Marrocco averred: "The Tres Amigo[s] Grove is in the Rainbow Municipal Water District. I am very familiar with groves that buy water from Rainbow Municipal Water District. I professionally consult and manage thousands of acres of avocados in this District. I also own and live on an 100 acre avocado grove that uses Rainbow Municipal Water District water. All of these groves routinely leach. In addition, I am personally aware of thousands of acres of other groves located outside the Rainbow Municipal Water District that use well water. These groves also require regular leaching. Therefore, it is clearly an accepted custom and practice to perform regular leaching in this locality. The Tres Amigo[s] Grove would require regular leaching whether it uses its own well water or 'public water.' "

On this element of section 3482.5, appellant's opposition relied on the declaration of agriscience expert James McDonald. He averred that, based on his investigation of the site, respondent irrigated its avocado groves with water having a very high salt level; that if respondent used metropolitan water as do most avocado farmers in Riverside and San Diego County, its trees would require significantly less water; and that large volumes of irrigation water were draining onto appellant's property due to respondent's application of "deep irrigation" to its avocado trees as compensation for the salinity levels. But McDonald did not directly contradict Marrocco's opinions as to avocado farmers in the locale using well water—as respondent points out, he did not address whether metropolitan water was in fact available for respondent's use, nor did he state that respondent was overwatering its groves, or that it uses more well water than other avocado farmers in the locality that also use well water. In short, McDonald's declaration was insufficient to sustain appellant's burden of producing competent evidence to contradict respondent's showing and raise a disputed issue of material fact on this element.

## B. *Changed Condition in or About the Locality*

Appellant claims it demonstrated a triable issue as to whether its claim arose due to a changed condition in or about the locality by presenting evidence of the fact it purchased the lower property in December 1997, and respondent purchased the upper property in November 1998.

We have already rejected this argument, which is based on the premise that section 3482.5 does not immunize a new farmer who has purchased and taken over an agricultural operation that had been in place for over three years. As stated, the undisputed evidence from respondent's declarants, including Munoz and Jerome Stehly, respondent's grove manager, was that commercial avocado farming had occurred on the upper property since the mid-1970's. Appellant's attempt to dispute this fact through evidence respondent had been conducting *its own* farming of the groves commercial operations for only approximately a year and a half does not raise a triable issue as to whether these circumstances fall outside the ambit of section 3482.5.

## C. *Reasonableness*

Appellant contends it raised an issue of material fact as to the "reasonableness" of the parties' respective actions under the "Civil Law Rule" expressed in *Keys v. Romley* (1966) 64 Cal.2d 396, 409-410 [50

Cal.Rptr. 273, 412 P.2d 529].[12] It argues it acted reasonably because it consulted with engineering specialists to determine the property's suitability for development, but respondent "has not acted reasonably in the use of its property because it is applying excessive amounts of water to its property, causing surface water to run onto the property of Appellant."

Reasonableness of the encroaching urban landowner's conduct is not an element of section 3482.5, and therefore whether appellant's conduct was reasonable is not material to application of the statute. The pertinent question under the statute is whether the commercial agricultural activity at issue—respondent's irrigation—is an accepted and customary practice followed by similar operations in the locale. If respondent's watering practices are unreasonable it would tend to show that they are not accepted or customary. But appellant's evidence fails to support its assertion. Although appellant's expert McDonald may suggest respondent's watering with well water is not customary because "[m]ost avocado farmers in the Riverside and San Diego County customarily use [m]etropolitan water to irrigate their avocado trees," he did not address or contradict the testimony of respondent's grove manager that respondent in fact could not use such water because they have no water meter and could not buy water district water even if they wanted to. As we have pointed out, McDonald did not address the customary irrigation methods for avocado farmers in the locality who use well water. He simply concluded that respondent used a large volume of irrigation water due to the water's high salinity, without opining whether or not use of such a large volume was reasonable. No evidence contradicts respondent's expert's conclusion that respondent's irrigation practices are customary for avocado farmers in the locale who use well water. Appellant's evidence provides no basis for us to reverse the trial court's ruling.

---

[12]In *Keys v. Romley*, the court explained that under this rule, "the owner of an upper, or dominant, estate is entitled to discharge surface water from his land as the water naturally flows. As a corollary to this, the upper owner is liable for any damage he causes to adjacent property by the discharge of water in an unnatural manner. In essence, each property owner's duty is to leave the natural flow of surface water undisturbed." (*Keys v. Romley, supra*, 64 Cal.2d at pp. 405-406; see also *Gdowski v. Louie* (2000) 84 Cal.App.4th 1395, 1402 [101 Cal.Rptr.2d 609].) However, in areas that are both rural and urban, the court held a modified rule should be applied that focuses on the reasonableness of each parties conduct. (*Keys v. Romley,* at pp. 408-409.) Subsequent cases have summarized the rules laid down in *Keys v. Romley* as follows: " '1. If the upper owner is reasonable and the lower owner unreasonable, the upper owner wins; 2. If the upper owner is unreasonable and the lower owner reasonable, the lower owner wins; and 3. If both the upper and lower owner are reasonable, the lower owner wins also.' " (*Gdowski v. Louie,* at p. 1404, italics omitted, quoting *Burrows v. State of California* (1968) 260 Cal.App.2d 29, 32-33 [66 Cal.Rptr. 868].)

## DISPOSITION

The judgment is affirmed.

McIntyre, Acting P. J., and McConnell, J., concurred.