Filed 2/22/24  P. v. Sounatananh CA4/2
*See Concurring Opinion*

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E080757 |
| v. | (Super.Ct.No. FVI22001158) |
| NICK SOUNATANANH, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Miriam Ivy Morton, Judge.  Affirmed.

Jason Anderson, District Attorney, and Cary Epstein, Deputy District Attorney, for Plaintiff and Appellant.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Respondent.

Rob Bonta, Attorney General, Robert W. Byrne, Assistant Attorney General, Myung J. Park, Carol A. Z. Boyd and Janelle M. Smith, Deputy Attorneys General, as Amicus Curiae for State Water Resources Control Board.

1

<u>INTRODUCTION</u>

In this appeal, the People contend the trial court erred in granting defendant and respondent Nick Sounatananh's motion to dismiss pursuant to Penal Code section 995. The People argue defendant's failure to obtain a permit through the regional water board is sufficient evidence to demonstrate a violation of Health and Safety Code section 11358, subdivision (d)(3)(B), marijuana cultivation with a concurrent violation of Water Code section 13260. The People also argue the mere use of water in outdoor commercial cannabis cultivation constitutes waste, and evidence of such use, by itself, is sufficient to constitute a violation of Health and Safety Code section 11358, subdivision (d)(3)(B). We affirm.

<u>PROCEDURAL BACKGROUND</u>

On May 6, 2022, the People filed a felony complaint charging defendant with marijuana cultivation in violation of Health and Safety Code section 11358, subdivision (d)(3). On September 27, 2022, a preliminary hearing was held. At the conclusion of evidence and argument, the magistrate found sufficient cause to believe defendant committed a violation of Health and Safety Code section 11358, subdivision (d)(3)(b). In discussing the evidence presented, the magistrate commented, "I don't suppose that marijuana plants that are being cultivated in this manner just subsist on water." The magistrate also opined, "I believe a large operation like this would require all kinds of chemicals to keep these plants going that can contaminate the water." Defense counsel pointed out to the magistrate "[t]here's no testimony of that. There's no

2

evidence of that." The magistrate responded, "[w]ell, I think that . . . is why a permit is required for such an operation . . . ." Prior to ruling, the magistrate concluded, "[a]gain, the Court has to assume there's going to be some contamination from this—the size of this project, the type of project, how it's being done, . . ."

On October 13, 2022, defendant filed a motion to dismiss pursuant to Penal Code section 995. In his motion, defendant argued the absence of a permit is insufficient to prove a violation of Water Code section 13260.[1] Defendant also argued the People failed to prove actual discharge of waste at the preliminary hearing. The People filed an opposition to defendant's motion to dismiss and a supplemental opposition. In their two oppositions, the People argued that the absence of a permit alone is sufficient to prove a violation of section 13260. The People also argued use of water, in commercial marijuana cultivation, by itself, constitutes waste and thus violates section 13260. On January 27, 2023, defendant's motion was heard and granted by a superior court judge. The superior court judge reasoned, "There is no indication in this preliminary hearing transcript that there's anything other than water and some plants." In evaluating the legal issues, the superior court judge commented, "[a]nd we are all sitting here and agreeing that there was no illegal discharge of waste. Now, perhaps they need a permit to cultivate the marijuana, so their marijuana cultivation process needs to be shut down, but does it rise to this concurrence with a violation of environmental law? It is not as you have it written here." In granting defendant's motion, the superior court judge stated, "I have

---

[1] All further unlabeled statutory references are to the Water Code.

3

reviewed Water Code section 13260. I don't see anything in this preliminary hearing [transcript] that rises to the level to hold to answer in violation of this code section."

STATEMENT OF FACTS[2]

Deputy Griego had been a sworn deputy for approximately 15 years. In 2021, Deputy Griego was assigned to the marijuana enforcement team where he received in-house training regarding marijuana grows and cultivation of marijuana. During his year on the marijuana enforcement team, Deputy Griego conducted approximately 70 investigations on his own and participated in several hundred investigations with other members of his team. On March 3, 2022, Deputy Griego served a search warrant for a suspected illegal marijuana cultivation in San Bernadino County, specifically in Newberry Springs. Deputy Griego and his team scouted the area two days prior to executing the search warrant and observed two marijuana grow houses on the property. The grow houses were each approximately 40 feet long by 40 feet wide. Deputy Griego likened the structure to the skeleton of a greenhouse. There were no permanent structures on the property.

Upon arriving at the location to execute the search warrant, Deputy Griego saw a single trailer on the property. Deputy Griego and his team made announcements and defendant exited the trailer. Defendant's date of birth was established by his identification card to be October 6, 1971. In speaking to defendant, Deputy Griego noticed defendant's hands were dirty, had soil or dirt on them, and were tinted green.

---

[2] The statement of facts contains only those facts presented at the preliminary hearing.

4

Deputy Griego found the appearance of defendant's hands to be consistent with someone handling marijuana plants. Deputy Griego also compared defendant's shoes to shoe impressions left around the property and found them to be a match. When interviewed, defendant eventually admitted to being at the location to water and tend to the marijuana plants.

During a search of the property, 630 marijuana plants were located. Deputy Griego also observed four water cubes, each containing approximately 275 gallons of water. It appeared the water cubes were being used to water the marijuana plants. The water cubes had hoses and irrigation running to the grow houses. The hoses were being used to water the marijuana plants by hand. The soil around the plants was damp indicating to Deputy Griego the plants had recently been watered. A marijuana plant requires one to five gallons of water a day. The size of the water cubes located on the property was consistent with the volume of water necessary to water the marijuana plants found. A well was also located on the property. Deputy Griego did not investigate the nature of the well or whether it was operational.

A permit from the regional water board is required to cultivate marijuana. K. Bindl is an environmental scientist who works for the water board. K. Bindl is in charge of water code violations and has received training from attorneys at her office regarding water waste violations and other water code violations. K. Bindl has also received training on internal and commercial policies regarding water. K. Bindl's agency issues water discharge permits for marijuana cultivation. Water discharge permits are required

for any legal water discharge from hemp grows and other marijuana cultivations. K. Bindl reviewed the records for the property Deputy Greigo searched and found no water discharge permit had been issued. K. Bindl opined that based on her training, education, and experience, failure to have a discharge permit for a marijuana cultivation is a violation of section 13260.

Samples of the marijuana located on the property were taken and booked into evidence. The marijuana samples were later tested by the supervisor of the lab used by the San Bernardino Sheriff's Department (Sheriff's Department). The lab supervisor, having 25 years of laboratory experience and using scientifically accepted methods, tested the marijuana provided by the Sheriff's Department. Based on the results of the testing, the lab supervisor opined that the substance provided by the Sheriff's Department was marijuana.

STANDARD OF REVIEW

At the preliminary hearing, the magistrate's role "is to determine whether there is 'sufficient cause' to believe [the] defendant guilty of the charged offense." (*People v. Abelino* (2021) 62 Cal.App.5th 563, 573 (*Abelino*).) Sufficient cause is " ' "generally equivalent to 'reasonable and probable cause.' " ' " (*People v. San Nicholas* (2004) 34 Cal.4th 614, 654, quoting *People v. Williams* (1988) 44 Cal.3d 883, 924).) Reasonable or probable cause exists where " ' "such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." ' " (*San Nicholas*, at p. 654.)

Under Penal Code Section 995, a defendant may move to dismiss an information on the ground that the defendant "had been committed without reasonable or probable cause." (Pen. Code, § 995, subd. (a)(2)(B).) In reviewing a superior court's ruling on a motion to dismiss pursuant to Penal Code section 995, the reviewing court directly reviews the magistrate's ruling at the preliminary hearing. (*People v. Superior Court* (*Mendez*) (2022) 86 Cal.App.5th 268, 277).) The reviewing court "draw[s] all reasonable inferences in favor of the information [citations] and decide[s] whether there is probable cause to hold the defendant[] to answer, i.e., whether the evidence is such that 'a reasonable person could harbor a strong suspicion of the defendant's guilt' [citations]." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072.)

"[A]n . . . information should be set aside only when there is a total absence of evidence to support a necessary element of the offense [or special circumstance] charged. [Citations.] [¶] 'Although there must be some showing as to the existence of each element . . . such a showing may be made by means of circumstantial evidence supportive of reasonable inferences on the part of the magistrate.' [Citation.] 'Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information.' [Citations.]" (*People v. Superior Court* (*Jurado*) (1992) 4 Cal.App.4th 1217, 1226.) However, the inferences must be reasonable. (*Ibid.*) "An inference is not reasonable if it is based only on speculation. [Citation.]" (*People v. Holt* (1997) 15 Cal.4th 619, 669.)

DISCUSSION

*A. Sufficient Evidence was Presented to Find Defendant Violated Health and Safety Code Section 11358, Subdivision (c)*

Under Health and Safety Code section 11358, subdivision (c), it is a misdemeanor for a person 18 years or older to cultivate more than six living cannabis plants, except as provided by law. A violation of Health and Safety Code section 11358 becomes a felony if the violation meets the additional requirement of resulting in a violation of certain enumerated environmental laws, as in this case Water Code section 13260. (Health & Saf. Code, § 11358, subd. (d).)

Here, the People argue and defendant agrees, sufficient evidence was presented at the preliminary hearing for defendant to be held to answer for a misdemeanor violation of Health and Safety Code section 11358, subdivision (c). At the preliminary hearing, Deputy Griego testified defendant was 51 years old at the time of the offense. Defendant admitted to being at the location to water and tend to the marijuana plants. Defendant's shoe prints were located near the marijuana plants and his hands were tinted green with remnants of dirt or soil. The grow houses contained a total of 630 suspected marijuana plants. When tested, the samples taken from the grow houses, tested positive for marijuana. This evidence, taken in its totality, constitutes "sufficient cause" to believe defendant is guilty of a violation Health and Safety Code section 11358, subdivision (c). (*Abelino*, *supra*, 62 Cal.App.5th at p. 573.)

*B. Insufficient Evidence was* Presented *to Find Defendant Violated Health and Safety*

*Code 11358, subdivision* (*d*)(*3*)(*B*)

In 2016, the Comprehensive Adult Use of Marijuana Act (Proposition 64) amended Health and Safety Code section 11358 to narrow the circumstances when cultivation of marijuana is punishable as a felony. (Proposition 64, pp. 60-61.) As amended by Proposition 64, a violation of Health and Safety Code section 11358 is punishable as a felony when marijuana cultivation results in a violation of certain enumerated environmental laws. (Health & Saf. Code, § 11358, subd. (d).) In discussing various concerns regarding marijuana cultivation, the authors of Proposition 64 expressed, "[c]urrently, illegal marijuana growers steal or divert millions of gallons of water without any accountability. The Adult Use of Marijuana Act will create strict environmental regulations to ensure that the marijuana is grown efficiently and legally, to regulate the use of pesticides, to prevent wasting water, and to minimize water usage. (Proposition 64, p. 2.)

In an effort to achieve these goals, Proposition 64 requires each regional water board to establish conditions addressing 12 separate concerns: (1) Site development and maintenance, erosion control and drainage features; (2) stream crossing installation and maintenance; (3) riparian and wetland protection and management; (4) soil disposal; (5) water storage and use; (6) irrigation runoff; (7) fertilizers and soil; (8) pesticides and herbicides; (9) petroleum products and other chemicals; (10) cultivation-related waste; (11) refuse and human waste; (12) clean up, restoration, and mitigation. (Proposition 64,

9

p. 46.)  The environmental laws Proposition 64 added to Health and Safety Code section 11358 are demonstrative of these concerns.  For example, the amendment included:  Water Code section 1052 (unauthorized diversion of water); Water Code section 13272 (prohibiting discharge of petroleum into state waters); Fish and Game Code section 5652 (prohibiting disposal of litter, waste, etc. into state waters); Fish and Game Code section 1602 (prohibiting substantial diversion or obstruction of natural water flow); Penal Code section 374.8 (prohibiting hazardous substances to enter state waters).

Health and Safety Code section 11358 includes Water Code section 13260.  Section 13260, subdivision (a), provides, "Each of the following persons shall file with the appropriate regional board a report of the discharge, containing the information that may be required by the regional board:  [¶]  (1) A person discharging waste, or proposing to discharge waste, within any region that could affect the quality of the waters of the state, other than into a community sewer system."  (Wat. Code, § 13260, subd. (a)(1).)  " 'Waste' includes sewage and any and all other waste substances, liquid, solid, gaseous, or radioactive, associated with human habitation, or of human or animal origin, or from any producing, manufacturing, or processing operation, including waste placed within containers of whatever nature prior to, and for purposes of, disposal."  (Wat. Code, § 13050, subd. (d).)  Evidence of harm can convert an otherwise innocuous substance into waste, and a substance's characterization as waste turns on "the harm it cause[s] to the environment."  (*Sweeney v. California Regional Water Quality Control Bd.* (2021) 61

10

Cal.App.5th 1093, 1119 (*Sweeney*).) " 'Waters of the state' " is defined as "any surface water or groundwater, including saline waters, within the boundaries of the state." (Wat. Code, § 13050, subd. (e).)

Here, at the preliminary hearing, the People proceeded on the theory that defendant violated section 13260. Thus, the threshold issue is whether defendant is a person discharging or proposing to discharge waste. At the motion to dismiss hearing, the People conceded no evidence was presented showing defendant actually discharged waste, instead relying on the absence of a permit as sufficient grounds for a violation of section 13260. However, the People now argue, use of water, alone, in marijuana cultivation constitutes waste.

There are two arguably broad categories of waste: (1) a substance that is independently waste regardless of how it is used; (2) a substance that is generally innocuous but can be converted into waste when it is used in a manner that harms the environment. Here, the People's argument that use of uncontaminated water in a marijuana cultivation constitutes waste implicates the second category of waste. While an innocuous substance, such as water, can constitute waste, the manner in which it is used is paramount to such a conclusion. (See *Lake Madrone Water Dist. v. State Water Resources Control Bd.* (1989) 209 Cal.App.3d 163, 170 (*Lake Madrone*) [release of dam water resulting in flushing accumulated sediment into a creek constituted "waste" for purposes of clean water statute]; see also *Sweeney*, *supra*, 61 Cal.App.5th at pp. 1117-

11

1118 [use of non-contaminated fill material constituted waste when its use to repair an exterior levy resulted in environmental harm to a tidal marsh].)

While acknowledging that "affect[ing] . . . the waters of the state" is a separate element of section 13260, the fact that the environmental impact of a substance's use in a particular manner can convert an otherwise innocuous substance into waste, we must consider that impact in assessing whether a substance qualifies as waste. In *Lake Madrone*, the opening of the dam and releasing water downstream was causing concentrated sediment to clog a downstream creek. (*Lake Madrone, supra,* 209 Cal.App.3d at 170.) The court in *Lake Madrone* acknowledged that while the silt was innocuous "in its unconcentrated form," "by furnishing a man-made artificial location for its concentration, . . . the innocuous substance [was changed] into one . . . deadly to aquatic life." (*Lake Madrone*, *supra*, 209 Cal.App.3d at pp. 169-170.) In *Sweeney*, the court concluded that uncontaminated fill material could convert into waste when the use of that material converted the site "from tidal marsh to a largely dry island." (*Sweeney*, *supra*, 61 Cal.App.5th at p. 1118.)

The People failed to provide evidence of a functional equivalent at the marijuana cultivation site. There was no evidence presented that the water used in the marijuana cultivation was having a negative impact on the surrounding environment, including, but not limited to the surrounding state waters. The holdings in *Lake Madrone* and *Sweeney* suggest a negative environmental impact is necessary to convert an otherwise innocuous substance, such as water, into "waste." Further, there was no evidence presented that the

12

water was mixing with any substances that would result in the water itself constituting sewage or waste, independent of an environmental impact. Without such evidence, the use of water itself does not constitute waste. No other evidence of actual discharge was presented or argued. As such, the People failed to prove defendant was a person discharging waste.

Section 13260 is also violated if defendant is a person proposing to discharge waste. (§ 13260, subd. (a)(1).) The evidence presented at the preliminary hearing relevant to this inquiry involves the nature of the property and the nature and character of the cultivation operation. All evidence presented was testimonial. There were no photos or other exhibits presented at the preliminary hearing. Related to the nature of the property, evidence was presented that the property did not have a specific address, but was identified by parcel number. The property contained a travel trailer with a fence surrounding it, two grow houses, and a well. The square footage of the grow houses was a combined 3,200 square feet. All other physical characteristics about the property are unknown. It is unknown whether the property is in a rural area, if the property was attached to a community sewer system, or if there were nearby lakes, streams, or other state waters.

Related to the nature and character of the cultivation operation, evidence was presented that the property contained two grow houses holding a total of 630 marijuana plants. Four water cubes were located, each of which held 275 gallons of water. The water containers had hoses and irrigation attached to them and it appeared the hoses were

13

being used to water the marijuana plants by hand. The ground near the marijuana plants was damp as if it had been watered recently. No evidence was presented related to waste discharge, actual or potential. There was no evidence presented about whether there were waste containers on the property, irrigation runoff visible, or any other method of waste disposal. There was also no evidence presented about the use of chemicals or pesticides.

In addition to a lack of evidence presented as to the nature and character of this particular cultivation operation, the record also lacks generalized testimony about the nature and character of cultivation operations of this size. While testifying, Deputy Griego began to opine about the environmental impact of marijuana cultivation, however, the magistrate sustained an objection and no further efforts to elaborate were made. There was no evidence presented that marijuana cultivations of this size, by definition, would result in waste that could impact the waters of the state. Nor was there any other generalized testimony about the common practices of marijuana cultivation, such as the use of pesticides or waste disposal procedures.

Ultimately in ruling, the magistrate assumed facts that were not presented at the preliminary hearing. The magistrate's comment, "I don't suppose that marijuana plants that are being cultivated in this manner just subsist on water," is not based on any evidence presented at the preliminary hearing and instead appears to be based on speculation. The magistrate speculated further stating, "I believe a large operation like this would require all kinds of chemicals to keep these plants going that can contaminate the water." After comments by defense counsel about the lack of evidence presented, the

14

magistrate concluded, "[a]gain, the Court has to assume there's going to be some contamination from this—the size of the project, the type of project, how it's being done, . . ." While a magistrate is able to make reasonable inferences based on the evidence presented, speculation of this nature and to this degree goes beyond the requirement that the reviewing court draw " ' "every legitimate inference . . . in favor of the information." ' " (*Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 842.) The preliminary hearing transcript is devoid of any evidence showing defendant discharged or proposed to discharge waste. Thus, the People did not provide sufficient cause to believe defendant violated Water Code section 13260, and in turn, Health and Safety Code section 11358, subdivision (d)(3)(B).

In their reply brief, the People argue defendant's failure to obtain a permit through the regional water board is sufficient evidence to demonstrate a violation of Health and Safety Code section 11358, subdivision (d)(3)(B). However, the plain language of the statute does not support this conclusion. Water Code section 13260 imposes a reporting requirement on individuals engaging in or proposing to engage in certain conduct. Not having a valid discharge permit is not proof, by itself, that an individual is engaging in or proposing to engage in discharge of waste that could affect the quality of the waters of the state. Water Code section 13304, subdivision (a), affirms our interpretation, providing in part, "A person . . . who has caused or . . . causes . . . any waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance, shall, upon

15

order of the regional board, clean up the waste or abate the effects of the waste, or, in the case of threatened pollution or nuisance, take other necessary remedial action."

Section 13304 requires that an individual or entity clean up discharged waste or abate the effects of the waste. (Wat. Code, § 13304 subd. (a).) In situations of threatened pollution or nuisance, an individual or entity shall take other necessary remedial action. (Wat. Code, § 13304, subd. (a).) The penalties enumerated in Water Code section 13304 presuppose actual damages or anticipated damages resulting from actual or proposed discharge of waste. These penalties do not conform with the People's interpretation of Water Code section 13260 where absence of a permit, by itself, is a violation. Instead, the language of Water Code section 13260 and its inclusion in Health and Safety Code section 11358 comports with the intentions of the drafters of Proposition 64 to curb the negative impacts of marijuana cultivation.

The People also argue "[b]ased on the size and scope of the outdoor commercial cannabis cultivation . . . a minimum of 630 gallons of liquid was being discharged on the ground each day. Such discharge of waste could have resulted irrigation runoff, tailwater, sediment or plant waste that could have entered the ground water affecting the water quality of the state." Again, no evidence presented at the preliminary hearing supports such conclusions. The testimony presented indicates that marijuana plants require one to five gallons of water a day and there is no evidence that the plants were being over watered or that the land was structured in such a way to prevent effective water absorption. Irrigation runoff, for example, suggests that the plants or land where

16

the irrigation is occurring is unable to absorb the volume of water discharged, thus resulting in water flowing to a different location. (*Martinson v. Hughey* (1988) 199 Cal.App.3d 318, 329 [discussing the rights of upper land owners to reasonably discharge irrigation tail water onto a lower land owner's property].) The watering of a large number of plants does not result in de facto irrigation runoff and mere absorption of water into the soil is not irrigation runoff. (*Rancho Viego v. Tres Amigos Viejos* (2002) 100 Cal.App.4th 550, 557 [describing irrigation runoff as "water cascading and seeping from the cut slopes… causing damage to and destabilization of the slope" that could be solved by reducing irrigation or installing water control systems].) No evidence presented at the preliminary hearing suggests this was occurring.

In their reply brief, the People outline the potential environmental harms marijuana cultivation operations produce. The People cite an article detailing, among other things, the risk of pesticides contaminating the water and the negative impact of marijuana leaching of nutrients from the soil. While informative, including this information in briefing does not ameliorate the absence of evidence at the preliminary hearing.

The People had the ability and opportunity to call a witness who could have provided testimony about the environmental impact marijuana cultivation has on the state's water. Evidence Code section 801 allows experts to testify "[r]elated to a subject that is sufficiently beyond common experience." (Evid. Code, § 801, subd. (a).) The environmental impact of marijuana cultivation is a subject sufficiently beyond common

17

experience. (See generally *People v. Guntert* (1981) 126 Cal.App.3d Supp. 1 [both prosecution and defense allowed to call experts where defendant on trial for depositing a substance and material deleterious to fish and plant life into state waters].) It's plausible K. Bindl had the knowledge and expertise to provide this evidence if she'd been asked. However, ultimately no evidence came before the magistrate related to these relevant issues. This court cannot speculate what the evidence would have shown if it had been presented.

The question before this court is not whether defendant is a person discharging or proposing to discharge waste in violation of section 13260, but instead, whether the People provided enough evidence at the preliminary hearing for the magistrate to find sufficient cause. A review of the record shows the People did not. This court cannot rely on the recitation of the impact of marijuana cultivation on the environment the People provide in their briefing when it was not presented to the magistrate as evidence. While argument of the law is appropriate, providing substantive evidence through briefing is not a substitute for presenting evidence at the preliminary hearing. To allow the People to put forth substantive evidence through briefing would rob defendant of the opportunity to object to its consideration. (*People v. Banda* (2018) 26 Cal.App.5th 349, 360 [finding trial court erred in taking judicial notice of a police report after the court ruled, depriving the defendant both notice and the opportunity to object].) While this court does not necessarily disagree that the marijuana cultivation at issue may have violated

18

section 13260, insufficient evidence was presented at the preliminary hearing to warrant a holding order.

DISPOSITION

The order granting defendant's motion to dismiss is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

I concur:

CODRINGTON

J.

19

[*People v. Sounatananh*, E080757]

RAPHAEL, J., Concurring.

I join the court in affirming the trial court's dismissal of the single felony charge of cultivating cannabis plants in violation of Health & Safety Code section 11358, subdivision (d)(3). This crime incorporates the elements of another statute defining a civil regulation. I respectfully concur separately because the majority's analysis does not focus on statutory language and obscures the elements of the offense.

I

The charge against defendant Nick Sounatananh includes three elements. The first is that he cultivated more than six living cannabis plants, and the second is that he did so knowing it was cannabis. (Health & Saf. Code, § 11358, subd. (d) (section 11358); CALCRIM No. 2370.) The parties agree the preliminary hearing testimony covered these elements, as Sounatananh was found at a cannabis operation with 630 live plants and admitted tending to them.

The third element makes the charge a felony if the cannabis cultivation offense "resulted in" a "violation of" at least one of a list of 15 other statutory provisions, mostly civil requirements from the Water Code or the Fish & Game Code. (§ 11358, subd. (d)(3).) The People argue they showed the cannabis cultivation offense resulted in a violation of Water Code section 13260 (section 13260) "relating to the discharge of water." (§ 11358, subd. (d)(3)(B).)

1

The disputed appellate issue, then, is whether the testimony at the preliminary hearing provided some evidence that the cannabis cultivation offense violated all the elements of section 13260. At this stage, the People simply need some non-speculative showing as to each element of the section 13260 violation. (Maj. opn., *ante*, at p. 7.) At trial, they would need to prove this charge beyond a reasonable doubt.

Because we analyze one criminal charge and only one of the theories that could support that charge, the case does not implicate the broad legislative mandate provided to the State Water Resources Control Board (Board) and its regional water quality control boards to regulate the range of ways that cannabis cultivation may affect the state's water supply. (See Wat. Code, § 13276, subd. (b)(1) [requiring that the Board address a dozen items relating to waste discharge from cannabis cultivation].)

Accordingly, one of the People's primary arguments is misdirected to this criminal case. They argue the Board's regulations require all commercial cannabis operations of a certain size to seek a permit, so those regulations "make clear that failure to file [for] a waste discharge permit prior to engaging" in an operation the size of the one in this case violates section 13260. That is, they claim the "burden is placed on the cultivator to comply with the regulations or suffer a violation of section 13260, subdivision (a)."

While the People may be correct as to what Board regulations require, section 13260, charged as a felony through section 11358, places no such burden on the cultivator. The language of the section does not (for instance) make criminal the failure to file a for a permit "as required by Board regulations." Rather, it makes criminal the

2

failure to file for a permit if a cannabis operator is discharging "waste" that "could affect the quality of the waters of the state, other than into a community sewer system." (§ 13260, subd. (a)(1).)**1** By its terms, the criminal statute applies only when the cultivation offense "results in" a violation of the Water Code provision. A cultivation offense cannot result in the failure to file for a permit, but it could result in a discharge of waste that affects the quality of the waters of the state.

So understood, the language of sections 11358 and 13260 allows for trial defenses that the operator was not discharging waste, that the waste did not affect the quality of state waters, or that the waste was discharged into a community sewer system. It does *not* provide for a felony if the operator failed to file for a permit for reasons that can be known only by reading regulations. The language of the felony charged through sections 11358 and 13260 therefore does not incorporate cannabis regulations that the Board adopts through a different statutory provision (such as Wat. Code, § 13149) granting it authority to issue cannabis cultivation regulations. The statutory crime for failure to furnish a report (or pay a fee) is Water Code section 13261 and defines a misdemeanor.**2**

---

**1** An illustrative contrast with this statute is the statute criminalizing the failure to file tax returns, which applies to people who fail to file any "required" return. (Rev. & Tax. Code, § 19701, subd. (a); see 26 U.S.C. § 7203 [including persons "required by . . . regulations" to file a federal return].) This language means that whenever regulations change the minimum income for which a tax return is required, the class of persons subject to criminal liability for failure to file also changes. (See CALCRIM No. 2800 [first element].) If Water Code section 13260 similarly required filing for any "required permit," then the only proof needed would be the failure to file as required.

**2** Although a permit is not required by section 11358, a valid permit may be a *defense* to a section 11358 charge. The crime excludes cannabis cultivators who are

*[footnote continued on next page]*

3

The question for us, then, is whether the People at the preliminary hearing provided some evidence that Sounatananh's cannabis operation violated the elements of section 13260 as the statute provides them. We must examine those elements.

II

Section 13260 requires certain people to file a report of a "discharge" with a regional water board. The section contains two elements Sounatananh identifies as unsupported by evidence. The people who must file reports are (a) discharging or proposing to discharge "waste" that (b) "could affect the quality of the waters of the state, other than into a community sewer system." (§ 13260, subd. (a)(1).)

As to the first of these elements, the preliminary hearing included sufficient evidence to suggest that "waste" was being discharged from the cannabis operation.

The preliminary hearing witness testified that the site included 630 live plants, and each plant was maintained with one to five gallons of water per day. This was evidence that the cannabis operation irrigated with at least 630, and perhaps about 3000, gallons of water daily. The soil was damp around the plants. Under the low preliminary hearing standard, this is sufficient evidence to establish that irrigation runoff was discharged from the marijuana operation, at least into groundwater.

---

acting as "provided by law." (§ 11358, subds. (a), (d).) California has a detailed licensing process for cannabis cultivation. (See Bus. & Prof. Code, §§ 26060-26066.2; Cal. Code Regs., tit. 4 §§ 15500-15507.) The model jury instructions contain instructions on "lawful use" defenses to some cannabis offenses. (See CALCRIM Nos. 3412, 3413, 3415; see also CALCRIM No. 2370 [bench notes discussing lawful use defenses].) They do not include permit authorization among the lawful use defenses, but such a defense should be available.

4

Water that is irrigation runoff from a cannabis operation constitutes "waste." "Waste" is defined for regulatory purposes, beyond just cannabis operations, in the division of the Water Code covering water quality.  It is defined comprehensively to include "liquid . . . from any producing, manufacturing, or processing operation."  (Wat. Code, § 13050(d).)[3]  That definition includes any irrigation runoff from an operation.  In fact, for cannabis cultivation, the Board must establish "waste discharge requirements" that include "irrigation runoff" as well as erosion control and drainage.  (Wat. Code, § 13276, subds. (b)(1), (b)(6).)  Those items do not depend on the water being mixed with some other substance before traveling through soil, and they are listed separately from fertilizers and pesticides.  (See *id.*, subds. (b)(7), (b)(8).)  Consequently, for instance, water discharged from a site can move or deposit "'silt or sediment,'" which can be waste affecting the state waters.  (*Santa Clara Valley Water District v. Cal. Regional Water Quality Control Board* (2020) 59 Cal.App.5th 199, 210; see also State Water Resources Control Board Order WQ 2019-0001-DWQ at p. 1 (General Order) <https://perma.cc/W8GS-ETPW> ["Waste discharges from cultivation sites include sediment"]; see also Wat. Code, § 13304, subd. (a) [waste discharge can constitute not just "pollution" but also "nuisance"].)  Whether the operation here discharged waste by irrigation runoff perhaps could be contested at trial.  But the People provided some

---

[3]  The provision defines "waste" circularly to include any "waste substances," and the definition of those substances is all-inclusive.  "'Waste' includes sewage and any and all other waste substances, liquid, solid, gaseous, or radioactive, associated with human habitation, or of human or animal origin, or from any producing, manufacturing, or processing operation, including waste placed within containers of whatever nature prior to, and for purposes of, disposal."  (Wat. Code, § 13050, subd. (d).)

evidence of "waste" through preliminary hearing testimony of the large water volume needed to maintain 630 cannabis plants.

That said, evidence for the second contested element was entirely lacking.

The People had to provide an indication that the irrigation runoff "could affect the quality of the waters of the state, other than into a community sewer system." (§ 13260, subd. (a)(1).) Even though irrigation runoff (untainted by any fertilizer or pesticide) *could* affect state waters, the People must offer some indication that the water at Sounatananh's site did so. Proof beyond a reasonable doubt is not needed until trial, but some piece of evidence is. The statutory language must be read to have some meaning.

To illustrate the difference between the elements of "waste" and "affecting the quality of waters," consider a backyard planter with a dozen marijuana plants, where the grower uses fertilizer but discharges irrigation runoff into the community sewer system. While the People could offer evidence of the discharge of waste, they could not offer proof of a section 13260 violation, because the discharge is into the sewer. Likewise, if such a small operation discharged not into the sewer but a small amount of water into the ground, there might be no way to show that the waste affected the quality of state waters.

In all, evidence of up to 3,000 gallons of daily water at a cannabis operation is sufficient to show irrigation runoff. If that runoff is in fact harmless to the quality of California's waters, the People would be unable to show the charged criminal violation at trial. In contrast, if the runoff affects state waters through erosion, silt, sediment, or some other substance the water collects, the People might be able to show a crime. At the

6

preliminary hearing, they needed some evidence of how the runoff affected state water quality, as the statute requires.  They offered none.  This is why we should affirm.

III

Having laid out what the statutes say, I will outline briefly why I think the majority opinion's analysis is lacking.  Although the majority cites the statutes, it does not tie its reasoning to them.  It thereby complicates and obfuscates what is needed for this section 11358 charge at a preliminary hearing.

The majority states there is "no evidence" of irrigation runoff.  (Maj. opn., *ante*, at pp. 16-17.)  The preliminary hearing testimony, however, suggested the site irrigates with up to 3,000 gallons of water a day.  The majority recognizes that the "waters of the state" include groundwater.  (*Id*. at p. 10.)  The majority also recognizes that because this case is at the preliminary hearing stage, there must be a "total absence" of evidence on an element to dismiss a case, with "circumstantial evidence" and "reasonable inferences" permitted.  (Maj. opn., *ante*, at p. 7 [citation omitted].)  The large amount of water is sufficient to support an inference of irrigation runoff.  If the majority means what it says, even with ample evidence of (for instance) bags of toxic fertilizers at the site, this charge would have to be dismissed without better proof of runoff.  To the contrary, the inference of irrigation runoff is reasonable for a preliminary hearing.

Apart from the *discharge* of runoff from the site is the showing that the discharge is "waste."  Rather than apply the broad statutory definition of waste, the majority creates "two arguably broad categories of waste" that includes substances that are

7

"independently waste" and substances that can be "converted into waste." (Maj. opn., ante, at p. 11.) This allows the majority to conclude that water discharge here is not waste without evidence that "the manner in which it is used" causes harm. (*Ibid*.) But as discussed, the statutory definition of waste includes all substances discharged by industrial use. It includes sediment, which water picks up simply by running through earth. The statutes themselves allow the Water Board to regulate "irrigation runoff" among "waste discharge requirements." (Wat. Code, § 13276, subds. (b), (b)(6).)

For these reasons, the majority is not correct—under the preliminary hearing standard—to conclude that "[n]o evidence was presented related to waste discharge, actual or potential." (Maj. opn., *ante*, at p. 14.) There was a reasonable inference of discharge of water as irrigation runoff, which is the "potential" waste discharge that the majority says there is no evidence of. (*Id*. at p. 14).

The proper focus of the opinion should be on the section 13260, subdivision (a)(1) element that makes the defendant guilty of the crime charged here if a waste discharge from the cannabis operation "could affect the quality of waters of the state." The majority folds this element into a broader test for when a discharge constitutes waste: if it has "a negative impact on the surrounding environment, including, but not limited to the surrounding state waters." (Maj. opn., *ante*, at p. 12).

Instead, our guidance for the People should be simple. Along with the extant evidence of water use at the cannabis cultivation, they must offer some evidence the water use would affect the quality of state waters. If the People can offer a reasonable

8

inference of this, that would be sufficient for the preliminary hearing.  With no evidence supporting such an inference, the charge was properly dismissed.

IV

The preliminary hearing testimony was deficient.  The People's proffered theory of the felony charge (§ 11358) is that the "discharge of water" from the cannabis cultivation (§ 11358, subd. (d)(3)(B)) was waste that "could affect the quality of the waters of the state" (§ 13260).  Yet they offered no indication Sounatananh's cannabis operation could affect the quality of state waters.  That warranted dismissal.

RAPHAEL _____
J.

9